[No. 16453. *En Banc.* March 13, 1922.]

## Frank Belkin, *Respondent,* v. Skinner & Eddy Corporation, *Appellant.*[1]

MASTER AND SERVANT (98, 110, 161, 163)—ASSUMPTION OF RISKS—CONTRIBUTORY NEGLIGENCE—SAFE PLACE—QUESTION FOR JURY. It cannot be said as a matter of law, that a riveter at work on a vessel requiring rapidity and constant attention, was guilty of contributory negligence or assumed the risk, where he fell from a scaffold, which was one plank narrower than customary, and which, at the point in question, was pushed under the deck some five or six inches; but the question is for the jury (TOLMAN, MACKINTOSH and MITCHELL, JJ., dissent).

SAME (170)—INSTRUCTIONS—ASSUMPTION OF RISKS. An instruction that to charge a servant with assumption of risks, it must appear that he knew and appreciated the danger is erroneous in not also charging him with assuming the risk and danger which, in the exercise of reasonable care, he should have known and appreciated.

TRIAL (97)—INSTRUCTIONS—MATTERS NOT SUSTAINED BY THE EVIDENCE. An instruction on the assumption of risks and the effect of momentary forgetfulness of a danger is prejudicial error where there was no evidence in the case as to momentary forgetfulness of the danger.

Appeal from a judgment of the superior court for King county, Jurey, J., entered December 23, 1920, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a riveter employed in the construction of a vessel. Reversed.

*J. Speed Smith, Henry Elliott, Jr.,* and *Hastings & Stedman,* for appellant.

*Jay C. Allen* and *J. W. Russell,* for respondent.

BRIDGES, J.—The respondent was injured while riveting a beading around the hatch of a vessel being con-

[1]Reported in 204 Pac. 1046.

structed by the appellant. The latter appeals from a judgment based on the verdict of the jury awarding respondent damages.

There was testimony tending to show the following facts: The respondent was an expert riveter. Three persons work with him; one heats the rivets or bolts to a white heat and throws them, one at a time, to a companion, who inserts them, while still very hot, in the holes which they are to fill. Immediately another man holds a heavy crowbar, or like instrument, against the rivet, and the riveter, with an automatic machine, at once does the driving. All of this work must be done while the rivet is nearly white hot. The riveting machine is spoken of as a "gun" because of its resemblance to that instrument. It is operated by compressed air, and strikes about 1,800 blows a minute. It has a recoil similar to that of a gun. In order that he may not be knocked off his balance by the recoil, the riveter must brace himself by putting one foot back of the other. The work must be done with great rapidity. It takes about thirty seconds or a little more to drive each rivet.

About four o'clock of the day of the injury, one of appellant's foremen directed respondent to rivet the beading around one of the hatches. At that time respondent asked the foreman if the necessary staging was prepared, and he was informed that it was, and that he should work overtime, up to six o'clock if necessary, because it was required that the boat should be finally completed on a definite near date. The beading to be riveted was on the combing of the hatch where it connects with the deck of the boat. The hatch in question was about thirty feet long by eighteen feet wide. It was customary at the plant in question and elsewhere for the staging upon which the

riveter would stand to consist of three planks placed side by side and each about a foot in width, and to extend around the sides and ends of the hatch. The staging customarily comes up nearly flush with the base of the hatch combing, and extends out into the hatch opening, that is, over the hold, some three feet or a little more. In this particular instance, but two planks were used to make the staging, each a foot wide, thus making the staging a little more than two feet in width. This staging was constructed around both sides and at one end of the hatchway, but at the other end there was no planking upon which the riveter might stand.

The respondent commenced his work on one side of the hatchway, at the corner where planking was laid across the end of the hatch. At that point the side staging was practically flush with the base of the combing, thus allowing something more than two feet of planking upon which the respondent might do his work. But this side planking, as it approached the other end of the hatch, was, for some reason, pushed in under the deck to the extent of some five or six inches, so that, as respondent approached the end where there was no planking, the platform on which he was required to stand was only about eighteen inches wide. While he was riveting on the side of the hatch, at a point some eighteen inches or two feet from the end where there was no planking, he stepped back for the purpose of bracing himself, but his foot went out beyond the planking and he fell several feet and was seriously injured. The testimony tended to show that, had there been planking or a platform across the end of the hatch near which he was working, his foot would have found a hold on that portion of the planking and he would not have fallen, nor probably would he have fallen had the staging along

the side of the hatch been parallel with the combing and not pushed in under the deck five or six inches.

Appellant's chief argument is that respondent fell as a result of his own carelessness, or, if the staging was defective, he should have known it, and consequently assumed the risk of working on it. Unquestionably the general rule is that the master must furnish his servant with a reasonably safe place in which to work; but it is equally well established that the servant may not blindly rely upon this duty of the master, for he must use some care and caution for his own welfare and protection. In other words, the servant will be held bound to observe those defects in a place where he is put to work which are perfectly open and obvious, and which a person of ordinary care and caution, working under like circumstances, would observe. But whether, in a particular instance, a servant must, as a matter of law, observe the defects and appreciate the dangers depends, to a large extent, upon the particular circumstances surrounding him and the opportunity given him to make such observations. The rule is very clearly stated by Mr. Justice Harlan, in *Kane v. Northern Central Railway Co.*, 128 U. S. 91, 32 L. Ed. 339, as follows:

"But in determining whether an employee has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position, indeed, to all the circumstances of the particular occasion."

The respondent's testimony tended to show that he relied upon the assurance of the master that the staging had been constructed and was ready for him, and that, because of the great rapidity with which he was required to do the work, he did not have much opportunity to make observations concerning the safety of

the staging. He says that he did observe that the staging appeared to be constructed along the entire side of the hatchway upon which he was working, but that he did not observe that one end of it was pushed some five or six inches under the deck of the vessel, nor did he observe that the end he was approaching and where he fell had no planking whatsoever. When we take into consideration, as we must, the rapidity with which the respondent's work must be done, and that each rivet must be driven while it is very hot, and that the instant he has completed driving one rivet his companions have placed another in position to be at once driven, and that the rivets in this particular instance were about six inches apart, and that the work was being done by an instrument which required the riveter to almost constantly give his attention to the work he was doing, we cannot say, as a matter of law, that the respondent was bound to see the alleged defects in the staging.

Appellant has cited many cases from this and other courts in support of its argument on these questions. We do not think any of them are controlling. Whether one has, as a matter of law, assumed the risks or has been guilty of negligence depends largely upon the circumstances and conditions surrounding him. In certain cases the court may say that a plaintiff must, of necessity, have seen the defects and appreciated the dangers, while under other circumstances the court would not feel like so declaring, and such is the situation here. We think the trial court properly submitted to the jury the questions of assumption of risk and contributory negligence.

Appellant complains of the following instruction given by the court:

"In order to charge a servant with assumption of risk it is necessary that it be made to appear that the

servant knew and appreciated the danger from which such injury resulted. Where a servant is ordered to do an act involving peril to himself, the order contains an assurance of safety, and the servant has a right to obey the order unless the danger is so open, obvious and imminent that no person of ordinary care and prudence would encounter it."

This instruction was erroneous because it failed to inform the jury that the respondent not only assumed the risk and danger which he knew and appreciated, but also those which, in the exercise of reasonable care under all the circumstances, he should have known and appreciated. Respondent seems to admit that the instruction might be erroneous as applied to many circumstances, but that it was correct in this case because the master had ordered this work to be done by the respondent, and had told him that the staging was prepared for him, and under those circumstances there was no duty devolving upon him to make any investigation for his own safety. If it be conceded that there is any exception to the general rule, it would be in instances where the master was present and directing the manner in which the work should be done. Here the facts are that the master was not present and was not directing the work. The respondent was simply directed to do the work, and the manner of doing it was entirely left to him. The instruction as given would not impose any duty whatsoever upon the servant to observe defects and dangers, even though they were perfectly open and obvious. Such is not the correct rule.

The appellant complains of the following instruction given by the court:

"I charge you that if the servant is injured by danger which is known to him, or which in the exercise of care and intelligence on his part should have

been known, yet if, in a moment of forgetfulness, while in the discharge of his duties, and owing to the haste required to perform such duties, he momentarily forgets such danger, and in such moment of forgetfulness is injured, that does not in law preclude a recovery. That is, the minute that fact appears it is not proper for the law to say, you cannot recover because you knew of the danger and you forgot it. That is a fact and circumstance which you may take into consideration with all other facts and circumstances in determining the character of the danger and determining the question of whether the servant was guilty of negligence.''

One of the objections made to this instruction is that there is no testimony upon which to base it. We are required to hold that this objection is well taken. We have very carefully read the respondent's testimony as it appears in the statement of facts, and we are unable to find any intimation that he was injured because he momentarily forgot the dangers or defects of which he complains. On the contrary, the testimony shows that he did not know whether there were two or three planks on the staging upon which he was working, and that he did not know that the planks along the side of the hatch where he was working were in part pushed under the deck of the boat, and that he did not know that there was no planking at the end of the hatchway where he fell. Manifestly, if he did not know of these defects or dangers, he could not have forgotten them. Nor can we say that this instruction was harmless. At best, the doctrine of ''momentary forgetfulness'' has a tendency to defeat and annul the doctrines of contributory negligence and assumption of risk and should not be applied to all cases and circumstances, and where it is applied it is manifest that it is a doctrine which must clearly influence the case and the conclusions which may be

reached by the jury. In other words, when this doctrine is applied to a case it is of vital importance. Because there was no testimony upon which to base this instruction, we do not feel called upon to determine whether or not the instruction would have been proper in a case of this character, had there been testimony tending to show that the injury resulted from momentary forgetfulness.

For the errors noted, the judgment is reversed and the cause remanded for new trial.

PARKER, C. J., MAIN, HOLCOMB, and HOVEY, JJ., concur.

TOLMAN, J. (dissenting)—I am unable to concur in that part of the opinion which holds that respondent did not assume the risk as a matter of law. There were no concealed defects in the scaffolding. The light was good and respondent testified that he could have seen if he had looked. The limitations of the scaffolding were perfectly open and apparent, and under these conditions reasonable minds may not differ. It was the duty of respondent to use some care for his own safety, and the slightest and most superficial observation upon his part when he went upon the scaffolding would have fully advised him of the danger of the situation. Under these conditions he should be held to have assumed the risk, and the action should be dismissed.

MACKINTOSH and MITCHELL, JJ., concur with TOLMAN, J.