[No. 19719.   Department One.   March 29, 1926.]

C. CHRISTANSEN, *Respondent*, v. PUGET SOUND NAVIGATION COMPANY, *Appellant*.[1]

[1] MASTER AND SERVANT (154, 161, 163)—PERSONAL INJURIES—QUESTIONS FOR JURY—SAFE PLACE—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE. The negligence of a master in failing to supply a safe place to work and the contributory negligence and assumption of risks of the servant, are questions for the jury where it appears that a seaman on a ferry boat fell and sustained injuries through stepping on a loose plank in a platform which he had used many times in work requiring rapidity, and that it was sometimes necessary to loosen the plank, and it might have been left unfastened at the time of the accident.

[2] APPEAL (460)— HARMLESS ERROR — INSTRUCTIONS — PREJUDICIAL EFFECT. Error can not be assigned upon giving an unnecessary instruction as to a master's delegation of a duty, as to which there was no evidence, where it could not have mislead the jury or prejudiced the appellant.

[3] DAMAGES (107)—EVIDENCE—PHYSICAL SUFFERING — SUFFICIENCY OF EVIDENCE. Testimony by a seaman that his ankle "bothered" him so that he could not work, and that a physician found it badly swollen and tender on pressure, makes the matter of pain and suffering a proper element of damage to submit to the jury.

Appeal from a judgment of the superior court for King county, Douglas, J., entered April 27, 1925, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a fireman upon a ferry boat. Affirmed.

*Bronson, Robinson & Jones,* for appellant.

*G. F. Vanderveer, W. G. Beardslee,* and *M. H. Cooperman,* for respondent.

[1] Reported in 244 Pac. 569.

HOLCOMB, J.—In this personal injury action, in which respondent alleged damages in the sum of $870, alleged to have been sustained while employed as a fireman on the Steam Ferry Boat "SEATTLE," operated by appellant, through the negligence of appellant, a verdict for $500 was given by the jury, upon which judgment was entered.

Respondent alleged in his complaint that, as such fireman, it was one of his duties to go upon a certain platform above the fire room to operate certain valves in the vessel's stacks; that appellant had constructed the platform by placing two planks about 2″ x 12″ and about 36′ in length across two steel beams, and negligently failed to secure such planks in position by bolts, cleats, or otherwise, so that there was danger that the vibration of the vessel would dislodge the same; that on May 9, 1924, respondent, in performing his duties, went upon the platform, when, as a natural and proximate result of appellant's failure to provide a suitable and safe footing for respondent, one of the planks slipped from the forebeam causing respondent to be thrown between the beams and the boiler and severely wrenching and spraining his left ankle.

It was alleged that respondent was capable of earning $70 per month, and subsistence of the further value of $60 per month; that he was confined to his home one month, and unable to resume work for a further period of six weeks, to his damage in the sum of $237.50; that he expended $32.50 for medical expenses, and suffered pain, and still continued to suffer pain and physical discomfort, to his further damage in the sum of $500.

Appellant admitted the employment; that the platform was constructed substantially as alleged, but denied that such construction was negligent or danger-

ous; admitted that respondent was capable of earning $70 per month, and subsistence of $60 per month, but denied that respondent was injured as alleged, and all the particulars thereof. It set up as affirmative defenses, first, that, if he was injured as alleged, it was because of his own negligence in that, knowing that the planks were not fastened, he stepped upon them without ascertaining whether or not they were lying in a secure position; second, that, if respondent was injured as alleged, and if, in fact, there was any danger or risk in the construction of the platform mentioned, it was open and obvious to respondent, who was familiar with the construction and assumed such risk, if any. The affirmative defenses were denied by reply.

While alternately relying upon these defenses, appellant made it plain at the trial that its primary defense was that respondent was not injured on the platform as alleged at all; but that he had slipped on some boards placed by himself on the floor of the fire room on account of some water on the floor that had overflowed from the boilers.

Respondent introduced no evidence as to medical expenses, and that item was stricken from the consideration of the jury.

There was no witness to the occurrence which respondent alleged caused his injury. There was a conflict in the evidence as to what he said shortly thereafter as to the cause of his injury. That, however, was purely a question for the jury, as was the weight and credibility of the evidence of respondent as to how the accident happened. Neither was there any conflict in the evidence that, on the day when respondent says the injury occurred, he was noticed to have an injury which caused him to limp. His testimony was that the injury occurred, as nearly as he could remember,

at about fifteen or twenty minutes to eleven on the morning of May 9. He attempted to continue his work until about noon. He also attempted to return to work the next morning, according to the testimony of his superior, the chief engineer, which was not contradicted by him, but he was unable to continue, and had to desist.

[1] It appears from all the evidence that the vessel had been converted from a steamboat to a ferry boat; that respondent had worked on the vessel some seven or eight days, while she was in dry dock being rebuilt, and had been on the run four, five or six days before his alleged accident. The evidence shows that the platform or boards in question were some distance apart, and were placed upon two steel beams which ran crosswise of the vessel and were called "strongbacks." There were boards running lengthwise on top of these strongbacks and bolted to them, on which two boards were laid crosswise, which were 2 x 12 inches, and from three to five feet long. There is evidence that the boat, when being rebuilt, had had these cross-boards laid temporarily on top of the two iron beams, so that the firemen could perform their duties of attending to the steam valves in the vessel's stacks. Respondent had occasion to go up on these boards and attend to the valves probably twice a day during his period of duty from 8:00 to 12:00 each day. Respondent testified that when he went up on one of these boards in the performance of his duties to do something to the valves, in some way one of these planks tipped up and dropped down so that his foot was caught between the end of the plank and some pipes below the cross-beams.

There is evidence, also, on the part of appellant's own witness that, although the cross-boards had been nailed on the plank on top of the strongbacks, the one in ques-

tion upon which respondent stepped and which fell with him had to be loosened and raised up occasionally so that they could get at the boiler. The chief engineer himself admitted that "it might have been loose at the time in question." There was evidence, also, that an electrician who had worked on the vessel while it was being rebuilt, and then worked on another vessel for about two weeks, upon returning to the vessel in question to finish the electrical work in the fire and boiler room, found the planks in about the same condition they had been in when he left about two weeks before. He testified that he noticed that the planks were loose, when he got up to do the electrical work which he was required to do in that part of the vessel, and that he had to do some nailing to make them safe for him to work on; that, when he got up there, he noticed that they were loose, that is, not sufficiently fastened to brace himself so he could bend the pipes of the boiler and perform his duties; that he had to brace himself in using what is known as a "hickey," or pipe bender, to bend the pipes and put them into the boiler; that he had to have something secure to stand on. Of course, the situation of the electrician was entirely different from that of respondent. The electrician, having to perform the kind of work on the platform that he did, would, of course, in the exercise of due care and prudence, look to see whether there was a secure footing for him to brace himself upon and bend the pipes. Respondent had no such requirement. All he had to do was to stand upon the planks to attend to the valves in the stacks. He had stood upon them before, at which times they were probably secure and safe. As they may have been loose on the day in question, he was not furnished with a safe place upon which to perform his duties.

The above state of facts presents a matter somewhat stronger than that in *Belkin v. Skinner & Eddy Corporation,* 119 Wash. 80, 204 Pac. 1046. In that case we held that it could not be determined as a matter of law that a riveter on a vessel, whose work required rapidity and constant attention, was guilty of contributory negligence, or assumed the risk, where he fell from a scaffold which was one plank narrower than customary, and which, at the point in question, was pushed under the deck some five or six feet; that the question was for the jury.

We conclude, therefore, that the court did not err in denying appellant's motion for judgment n. o. v., upon the ground that there was no evidence of negligence on the part of appellant; or that there was evidence of negligence on the part of respondent; or that the evidence showed conclusively that respondent assumed whatever risk there was. These were all questions for the jury under the facts as shown by this record.

Appellant also complains of an instruction numbered 7 by the trial court which, appellant says, concerned non-delegable duties, and which was not germain to any issue raised by the pleadings or by the evidence.

[2] Instruction No. 7 simply charged the jury that the law imposed upon the employer the duty to exercise reasonable care and diligence in providing his employees with a safe working place, and that he could not delegate to an employee that duty in a manner to relieve himself of the duty; and that if he did so, and delegated it to an employee, such employee became the representative or agent of the employer in the discharge of that duty, and the employer, not the employee, is liable for the neglect.

It is true there was no evidence of any attempt to

delegate any of the duties owed by the employer in this case to another. The first part of the instruction complained of was manifestly proper and appropriate. *Westerlund v. Rothschild*, 53 Wash. 626, 102 Pac. 765; *Barney v. Anderson*, 116 Wash. 352, 199 Pac. 452. The last part of it was probably simply an unnecessary statement of the law. However, it could not have misled the jury, could not have been prejudicial to appellant, and was harmless error.

[3] Complaint is also made of an instruction by the court numbered 10. It is urged that the measure of damages was incorrectly given to the jury by such instruction, which told them that they could make an allowance for pain and suffering, when there was no testimony that respondent had suffered pain.

Respondent always used the word "bothered," when he spoke of the pain in his ankle. From the very first mention of the injury to his ankle he said that it "bothered" him so that he had to quit work, and "bothered" him so he could not continue work, and "bothered" so that he could not go to work again early in September, after the injury. Dr. Bates, the physician who examined him, who was conceded to be of the highest skill and ability by appellant, testified that when he examined respondent's ankle in May he found it badly swollen, and with some discoloration, but with no broken bones; that he saw him off and on for about two months; that he examined him again the day he testified at the trial, and found tenderness on pressure, and some swelling below the ankle in the upper part of the foot.

It is immaterial what words respondent, a seaman, used in mentioning his injuries. It is evident that what he meant by the word "bothered" was that it pained him. It is evident, also, from the testimony

of the physician as to the nature of the injury, that it pained him and that the pain continued to some extent to the day of trial.

. The case is not similar to that of *Bennett v. Oregon-Washington R, & Nav. Co.*, 83 Wash. 64, 145 Pac. 62, where an instruction to the jury submitting to them the element of pain and also mental anguish in the future from an injury received in an accident, was condemned on the ground that there was no evidence offered, from which the jury might find mental anguish from the injury causing respondent to be an object of pity, abhorrence, or ridicule. The matter of pain and suffering was a proper element to submit to the jury in this case, and the amount awarded by the jury therefor, which was approximately $168 in addition to the actual damages, was in no wise excessive.

The judgment is affirmed.

Tolman, C. J., Main, Mitchell, and Fullerton, JJ., concur.