[No. 25561. Department One. October 17, 1935.]

JOHN W. NEELEY, *Individually and as Administrator,*
*Appellant,* v. GLADYS BOCK, *Respondent.*[1]

*Henry W. Parrott* and *M. F. Porter,* for appellant.
*Roberts & Skeel* and *W. R. McKelvy,* for respondent.

MAIN, J.—This action was brought to recover damages for personal injuries, and also damages to an automobile. The cause was tried to the court and a jury, and resulted in a verdict for the defendant. Motion for a new trial being made and overruled, judg-

[1]Reported in 50 P. (2d) 524.

ment was entered dismissing the action, from which the plaintiff appeals.

The accident which gave rise to the litigation occurred at about eight o'clock a. m., March 22, 1934, on West Stewart avenue, which extends east and west, in the city of Puyallup. In the center of this street, there is a strip of pavement sixteen feet wide. On either side thereof is a dirt or gravel shoulder. Some construction work was being done on the north side of the pavement, which included the surfacing of a sidewalk area with cinders. There was a foreman in charge of the crew doing the work.

The appellant, John W. Neeley, who will be referred to as though he were the only party on that side of the litigation, was hauling cinders to be used for the sidewalk. On the morning in question, he had loaded his Ford automobile truck with cinders and was proceeding west along the street on the pavement in order that he might dump them at such place as the foreman on the work would indicate. When he was two or three hundred feet from where the foreman was standing on the north side of the pavement, the foreman gave him a stop signal. Thereafter, he slowed down, and as he approached where the foreman was standing, the two right-hand wheels were off of the pavement and the other two on it. The center of the automobile was about over the north edge of the pavement.

Following him as he drove down the street, was the respondent in a Ford automobile. When the appellant slowed down or stopped to get the direction of the foreman, the car driven by the respondent struck the truck in the rear, and it was for this collision that damages were sought.

The foreman, a witness called by the appellant, testified that the Ford truck had come almost to a stop when it was struck by the Ford automobile approach-

ing from the rear. As to the manner of the happening of the accident, this foreman testified:

"Q. Now, tell the jury what you observed at that time with reference to this accident or collision? A. Well, Mr. Neeley was hauling cinders to put on the sidewalk. We were refacing the sidewalk with cinders, and he was hauling cinders from the siding on the N. P. railroad yards in Puyallup, and this was his first trip in the morning, and I wanted to show him where I wanted the cinders dumped. So I seen him coming down the street and when he got close enough I just waved him down that way (illustrating), I wanted to tell him where to dump the cinders, so he naturally turned off the pavement and drove down where I were, and was just stopping when this car hit him behind."

A witness who saw the accident, called by the appellant, testified as follows:

"Q. Describe to the jury what you did see with reference to that. A. When I saw the truck that stopped, I saw it was only a moment after he opened the door and leaned out to talk to the boss in the ditch, it was almost instantly, then, that this car hit the back of the truck. The car seemed to almost leave the ground straight up when it hit the truck, and then is when I got up and left the house."

The question upon the appeal is whether the trial court erred in its instructions in submitting the case to the jury. Two instructions are complained of. One is referred to as No. 7 and the other one as 7-B.

With reference to instruction 7, it is not claimed that it contained an incorrect statement of the law, but that there was no evidence which justified the giving of it. In subdivision (10), § 41, p. 802, of chapter 309, Laws of 1927, it is provided that it shall be the duty of every person

". . . operating or driving any vehicle along or over any public highway and intending to stop, to

extend his arm from the left side of the motor vehicle or other vehicle or animal and extend downward for a reasonable length of time before stopping." Rem. Rev. Stat., § 6362-41 [P. C. § 196-41.]

Instruction 7 was based upon this provision of the statute. The objection to it, as indicated, is that there was no evidence which justified it being given. In other words, the appellant contends that there is no evidence to take the question to the jury as to whether he complied with this provision of the statute. Without reviewing or setting out the evidence here, it may be said that, after an examination of the record, we are of the opinion that the evidence was ample to take the question to the jury as to whether the appellant had given a signal which was required under the provision of the statute quoted.

In instruction 7-B, the jury were told that, under the law of this state, no person shall park or leave standing any vehicle, whether attended or unattended, upon any public highway, where it is practicable to park off of the paved highway, unless a clear and unobstructed width of not less than sixteen feet of the main traveled portion of the highway opposite said vehicle shall be left for free passage of other vehicles; and

". . . you are instructed that if you find from the evidence in this case that the plaintiff parked or left standing his car, upon the paved portion of the highway on which he was driving in such a manner that there was not a clear and unobstructed width of not less than sixteen feet of the pavement remaining opposite his vehicle left for the free passage of other vehicles, and that such parking and leaving his truck standing . . ."

contributed to the accident in a material degree, in that event the jury should return a verdict for the "defendant" (respondent). This instruction was

apparently intended to be based upon § 47, p. 808, of chapter 309 of the Laws of 1927, which provides that:

"No person shall park or leave standing any vehicle whether attended or unattended upon the paved or improved or main traveled portion of any public highway when it is practicable to park or leave such vehicle standing off of the road or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle whether attended or unattended upon any public highway unless a clear and unobstructed width of not less than sixteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon." Rem. Rev. Stat., § 6362-47 [P. C. § 196-47].

It will be noticed that this statute says that no person shall "park or leave standing" any vehicle upon a highway, as therein mentioned.

The appellant makes two objections to instruction 7-B: (a) That the provision of the statute, just mentioned, does not apply within the limits of an incorporated city, which Puyallup is; and (b) that there was no evidence to justify the giving of the instruction on the question of "park or leave standing."

■ Section 47 provides that no person shall park or leave standing any vehicle on the improved or main traveled portion of any "public highway." What is meant by "public highway" is not defined in that section, but in subdivision (g), p. 768, of § 2 of the same act we find the definition, as follows:

" 'Public Highway.' Every way or place of whatever nature open as a matter of right to the use of the public for the purpose of vehicular travel. The term 'highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons." Rem. Rev. Stat., § 6362-2 [P. C. § 196-2].

It will be observed that the statute says that a highway, within the contemplation of the act, is, "Every way or place of whatever nature open as a matter of right to the use of the public for the purposes of vehicular travel." There can be no question but that this definition is broad enough to include streets in incorporated cities, because they are open as a matter of right to the use of the public for the purposes of vehicular travel.

In the case of *Joseph v. Schwartz*, 128 Wash. 634, 224 Pac. 5, there is some language which would indicate that there was some doubt whether, under § 35, p. 276, of chapter 96, of the Laws of 1921, a city street was a highway under the language of that act in that particular section. No reference in the opinion in that case is made to a statutory definition of the term "highway." In the case now before us, we have the explicit language of the legislature, which, as indicated, cannot be construed otherwise than that of including city streets. The objection to the instruction on this ground was not well founded.

■ Whether the evidence was sufficient to justify the giving of an instruction on the question of parking or leaving standing a vehicle on the paved portion of the highway, presents, as we view it, the only serious question in the case. Under the testimony offered by the appellant, his truck had not come to a full stop, but had almost stopped at the time it was struck in the rear by the automobile driven by the respondent. According to the testimony offered by a witness called by the respondent on this question, the truck was stopped by the appellant suddenly, and was almost instantly thereafter struck by the vehicle approaching from behind. If the truck had not stopped, it could not be said to be parked or left standing. On the other hand, if the truck suddenly

stopped and was almost instantly thereafter hit in the rear by the approaching car, this would not amount to "park or leave standing," within the meaning of those words in the statute.

In 3 Berry on Automobiles (7th ed.), p. 130, it is said:

" 'Parking' within the meaning of regulatory statutes has been defined as the 'voluntary act of leaving a car on the highway when not in use;' another court has stated that 'to park' is 'to permit a vehicle to remain standing on a public highway or street.'

"It has been held that parking means something more than stopping temporarily or momentarily for a necessary purpose."

In 2 Berry on Automobiles (7th ed.), p. 132, it is said:

"The term 'parking', however, when applied to the traffic of automobiles does not usually comprehend the standing of vehicles while they are being loaded or unloaded, nor while they are otherwise in active use. It refers, rather, to the more or less temporary storage of such vehicles while they are not in use, and regulations governing such occupancy of the streets, if reasonable, are unquestionably valid."

In *Wonewoc v. Taubert*, 203 Wis. 73, 233 N. W. 755, 72 A. L. R. 224, it is said:

"The term 'parking', as applied to automobiles and automobile traffic, has a well-defined meaning, understood by all automobile drivers to mean not only the voluntary act of leaving a car on the street unattended but also the stopping of a car on the highway though occupied and attended for a length of time inconsistent with the reasonable use of a street, considering the primary purpose for which streets exist."

Many other cases might be cited to the same effect, but there appears to be no question about the rule,

and a multiplication of the authorities does not appear to be necessary.

. The stopping, in the case now before us, if the truck did stop, was intended to be temporary or momentary to get a direction from the foreman at the roadside as to where he desired the cinders dumped, which was a block or two farther down the street. The situation here presented by the facts stated is governed by the provision in subdivision (10), § 41, above quoted. From what has been said, it follows that there was no evidence upon which to submit the case to the jury on the question of "park or leave standing."

Under the instruction given on this question, if the jury found that there was parking or leaving standing, they had no alternative but to return a verdict for the respondent, because it was an admitted fact that there were not sixteen feet of pavement on the left of the truck upon which vehicles could pass by.

The case of *Gaches v. Daw,* 168 Wash. 162, 10 P. (2d) 1111, is upon entirely different facts. There, the automobile, while attended, was permitted to remain upon the paved portion of the highway while one of the occupants thereof got out and walked back some distance to read a road sign.

It is the settled rule in this jurisdiction that it is prejudicial error to submit to the jury a question where there was no substantial testimony upon which to base the instruction.

In *Burge v. Anderson,* 164 Wash. 509, 3 P. (2d) 131, it is said:

. "We have frequently and consistently held it to be error to submit to the jury a question where there was no substantial testimony upon which to base the instruction. *Tergeson v. Robinson Mfg. Co.,* 48 Wash. 294, 93 Pac. 428; *Stoddard v. Smathers,* 120 Wash. 53, 206 Pac. 933; *Spokane Valley State Bank*

*v. Murphy,* 150 Wash. 640, 274 Pac. 702; *Belkin v. Skinner & Eddy Corporation,* 119 Wash. 80, 204 Pac. 1046; *Eddy v. Spelger & Hurlbut,* 117 Wash. 632, 201 Pac. 898; *Hellenthal v. Edmonson,* 158 Wash. 276, 290 Pac. 831. The two last cases cited involved instructions as to defective brakes where there was no evidence on the subject, the giving of which was held to be prejudicial and reversible error.

"This case is to be distinguished from such cases as *Gabrielsen v. Seattle,* 150 Wash. 157, 272 Pac. 723, 63 A. L. R. 200, and *Tenneson v. Kadiak Fisheries Co., ante* p. 380, 2 P. (2d) 745, involving the giving of abstract instructions, correct in principle, where no issue upon the subject was presented."

There being no evidence from which the jury could conclude that the truck was parked or left standing, within the contemplation of the statute, it was prejudicial error to submit that question to the jury.

The judgment will be reversed and the cause remanded, with direction to the superior court to grant a new trial.

TOLMAN, BEALS, and GERAGHTY, JJ., concur.