## ANNA MAY HIMMEL v. LOUIS J. ORLISKI.[1]

February 1, 1946.

No. 34,092.

*John Edmund Burke* and *Frank E. McAllister,* for appellant.
*Freeman & King,* for respondent.

MAGNEY, JUSTICE.

Verdict was directed for defendant. Plaintiff appeals from an order denying her motion for a new trial.

University avenue in the city of St. Paul extends in a general easterly and westerly direction. It is intersected at right angles by Kent street. Traffic at the intersection is regulated by automatic traffic signals. In the center of the avenue is a double set of streetcar tracks. Alongside the outside rail of each track is a safety isle. On September 3, 1944, plaintiff, Anna May Himmel, seven years of age, was crossing the southerly half of the avenue from the southwest corner of Kent street to the safety isle, which extends along the southerly rail of the eastbound streetcar track. While so doing, she came into contact with an automobile owned and operated by defendant and was injured.

[1]Reported in 21 N. W. (2d) 605.

When defendant, driving east on University avenue, arrived at Kent street, the automatic traffic signal showed red, so he stopped. He was then about three feet from the safety isle on the south side of the streetcar tracks. Two other cars to his right had also come up to the intersection and stopped. Thus there were three cars standing abreast awaiting change of the traffic signal. Plaintiff had passed in front of the two cars nearest the south side of the avenue and was injured by coming into contact with defendant's car after it had started to cross Kent street.

Defendant testified that he did not see plaintiff until she "ran into my fender," the "right-hand front fender * * * the front part." He said he did not start up with the yellow light but waited until the green light flashed. When the traffic signal turned yellow, he said he shifted his gears so as to be ready to go. He does not know whether the other cars started up at the same time. He further testified as follows:

"Q. When you started up there on Kent and University, did you look to the right and to the left or did you just go right straight ahead?

"A. I was looking at the stop-and-go signal.

"Q. You weren't looking at any other traffic or any other persons on the street?

"A. I didn't see anybody there.

"Q. You didn't look, did you, you were looking at the traffic signal?

"A. Well, yes.

"Q. And that was all you looked at, is that correct?

"A. I was looking at the traffic signal.

"Q. You didn't notice anything else there except the two cars on your right?

"A. That is all.

\* \* \* \* \*

"Q. Were there any other cars coming in the other direction that you noticed?

"A. I didn't notice.

"Q. Was [sic] there any streetcars?

"A. No, I didn't notice any streetcars.

\* \* \* \* \*

"Q. You didn't see the little girl until she was hit?

"A. No."

After the accident, plaintiff was lying about a foot in front of the bumper of defendant's car and about the width of a car from the safety isle and out towards the center of Kent street.

From the testimony of defendant himself, as set out above, it cannot be said that as a matter of law defendant was free of negligence. At the time he started up his car, he looked neither to the right nor to the left, but only at the stop-and-go signal. He was paying no attention to the traffic on the street, and he did not notice whether there were any streetcars or automobiles except the two cars to his right; in fact he did not see plaintiff until she came into contact with his car. Since she was lying in front of the bumper of his car after the accident, she must have come into contact with the front of his car. As to defendant's negligence, we are of the opinion that it was for the jury to determine whether or not he was negligent in failing to keep a proper lookout.

Whether plaintiff was guilty of contributory negligence as a matter of law presents a more difficult question. Defendant claims that when plaintiff started across University avenue the traffic signal had changed to red and that she was therefore crossing against the "stop" sign. Her own testimony was to this effect:

"Q. Anna, when you were hurt last September when you went across University avenue there at Kent street, what was the signal?

"A. It was green.

"Q. Was it green when you started off from the curb?

"A. Yes."

On cross-examination, she testified that she was running across. She said there were two other older children with her at the southwest corner of the intersection and that they waited. She did not see any white or yellow lights on the signals. Defendant contends

that plaintiff's testimony as to the green light showing when she started from the curb was too indefinite and uncertain, as it may be taken to mean that the green light was showing on either University avenue or Kent street. We have quoted her statement verbatim, and a fair interpretation of her testimony is that the green light was on for her to cross University avenue when she started from the curb.

Minn. St. 1941, § 169.06, subd. 5 (Mason St. 1940 Supp. § 2720-164), deals with traffic-control signals.[2]

We have already quoted the testimony of plaintiff. The plat indicates 36 feet as the distance from the curb to the safety isle, a space that could readily accommodate three cars abreast, and defendant had stopped about three feet from the isle. While pro-

[2]"When traffic is controlled by traffic-control signals exhibiting the words 'Go,' 'Caution,' or 'Stop,' or exhibiting different colored lights successively one at a time, the following colors only shall be used, which terms. and lights shall indicate as follows:

"(a) Green alone, or 'Go'—

"(1) Vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn; *vehicular traffic shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited;*

"(2) Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk;

"(b) Yellow alone, or 'Caution,' when shown following the green or 'Go' signal—

"(1) Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at the intersection, but vehicles within the intersection may be driven cautiously through the intersection;

"(2) Pedestrians facing such signal are thereby advised that there is insufficient time to cross the roadway, and any pedestrian then starting to cross shall yield the right of way to all vehicles.

"(c) Red alone, or 'Stop'—

"(1) Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at an intersection * * * and shall remain standing until green or 'Go' is shown alone;

"(2) No pedestrian facing such signal shall enter the roadway unless he can do so safely and without interfering with any vehicular traffic." (Italics supplied.)

ceeding on the pedestrian crossing, plaintiff passed the two cars nearest the south curb and was struck while in front of defendant's car and almost up to the safety isle. Defendant must have started up his car just before the impact. The evidence does not disclose how long the signal device flashed the yellow light between the showings of green and red. It is common knowledge that the period of yellow is very brief, and the time varies with the different installations. In the situation as disclosed by the evidence, it is our opinion that it cannot be held as a matter of law that the signal device was not showing green for plaintiff to cross University avenue when she started to cross. Defendant admits in his brief that, if the record presents any evidence that when plaintiff left the curb the green light was in her favor or in favor of the north-and-south traffic, a jury issue was presented.

Recently, in the case of Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371, this court had occasion to discuss a situation where it was claimed that plaintiff's decedent crossed University avenue against the semaphore. We there discussed the facts in that case as follows (218 Minn. 356, 16 N. W. [2d] 292):

"* * * defendants assert: 'There is no dispute but that this accident happened while Mr. Moeller was crossing University avenue against the semaphore.' * * * Plaintiff denies that the semaphore was at 'Stop' for decedent when he left the curb. There is no direct testimony on this point. The only basis for defendants' position is the inference which is drawn from the testimony of the motorman, who testified that the sign was on 'Go' for University avenue traffic as the streetcar approached Hampden. That, in itself, does not conclusively establish that the sign was on 'Stop' for decedent when he started to cross the intersection. It is just as reasonable to infer that the sign was on 'Go' for him. He had traversed approximately one-half the width of University avenue from the time he left the curb until the impact, or a distance of approximately 35 feet. The sign may well have been on 'Go' for him when he left the curb, and changed while he was covering this

distance. At any rate, under the circumstances, the fact that the sign read *'Go'* for the motorman as he approached the intersection does not establish without dispute that it read *'Stop'* for the decedent when he left the curb."

In our opinion, on the recited testimony, the question of plaintiff's contributory negligence was for the jury.

In view of our disposition of the main question in the case, it is unnecessary to discuss the questioned ruling of the trial court on the admission of evidence.

Order reversed.