# ROBERT J. SEITZER v. ADOLPH H. HALVERSON, *d. b. a.* CITY CAB COMPANY, AND ANOTHER.[1]

May 11, 1950.

No. 35,164.

[1]Reported in 42 N. W. (2d) 635.

*Meagher, Geer & Markham,* for appellants.
*Stone, Anthony & MacKenzie* and *Henry Flor,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for personal injuries sustained by plaintiff, a minor of the age of seven years, as a result of being struck by a taxicab driven by defendant Gustafson and owned by defendant Halverson, in the city of St. Peter on February 18, 1947, at about 8:45 a.m.

The jury returned a verdict of $4,000 in favor of plaintiff. This is an appeal from the court's subsequent order denying defendants' motion for judgment notwithstanding the verdict or for a new trial.

On appeal, the questions presented are (1) was there sufficient evidence of negligence on the part of defendant Gustafson to re-

quire submission of this issue to the jury; (2) was plaintiff guilty of contributory negligence as a matter of law; (3) did the trial court err in refusing to instruct the jury that the sudden-emergency doctrine in the law of negligence governed the actions of defendant Gustafson at the time of the accident; (4) did the court err in admitting testimony of a medical expert based on hypothetical facts not then in evidence but which the court was assured would be supplied during the trial; and (5) was the jury's verdict excessive.

The accident took place at the intersection of Minnesota avenue and Park Row street in St. Peter. The former is 84 feet in width, extends in a general north-south direction, and has three traffic lanes on each side of its center line. The lanes nearest the curb thereon are reserved for diagonal parking. Park Row street extends in a general east-west direction. There are no traffic control signals in place or in operation at the intersection. The crosswalk over Minnesota avenue formed by the extension of the sidewalk on the north side of Park Row street is from six to eight feet in width. At the time of the accident it was indistinctly marked.

Shortly prior to the accident, plaintiff, on his way to school a few blocks away, had stopped on the sidewalk just north of the north line of the crosswalk on the northeast corner of the intersection preparatory to crossing Minnesota avenue. He had waited there for a line of cars to pass in front of him, going in a northerly direction, looked to his right and left, and then proceeded to walk across from the east to the west side of Minnesota avenue. Defendant Gustafson, in the meantime, was driving his taxicab south on Minnesota avenue approaching Park Row street. He was traveling on the west side of the center line thereof astride the line separating the first and second traffic lanes to the west of the center line.

After plaintiff had proceeded several feet past the center line of Minnesota avenue on his way across, he was struck by the cab. The impact threw him through the air so that his body came to rest a distance estimated by witnesses to be between 2 and 10

feet south of the south line of the crosswalk. There is a conflict in the testimony as to where the cab came to rest. Gustafson testified that the point of impact was several feet north of the crosswalk, and that he brought his cab to a stop at the point of contact. The witness Gordon Robeck, however, testified that he saw defendants' cab hit plaintiff; that the impact hurled plaintiff about 10 feet ahead of the cab; and that the cab stopped immediately after the impact with its front wheels and bumper within the crosswalk. The trial court left it to the jury to determine whether plaintiff was within the crosswalk when struck, with instructions that if it so determined the obligation rested upon Gustafson to yield to him the right of way under M. S. A. 169.21, subd. 2, as amended by L. 1947, c. 428, § 18, but if it determined plaintiff was not within the lines of such crosswalk that § 169.21, subd. 3 required him to yield the right of way to defendant. We, of course, are bound by the jury's finding on this question.

During the trial, Dr. C. S. Strathern was called as a medical expert on behalf of plaintiff. He attended him after the accident. Because his presence was required elsewhere the day he was called, the court permitted his testimony out of its regular order. He was asked the question:

"Doctor, assuming this boy was well and had none of the conditions I am now mentioning before the injury and assuming further that there is testimony in this case that he has now become listless, not as much interested in his studies as he was, inattentive when spoken to, complains quite often of headaches, such headaches as are accompanied by vomiting and sick stomach, complains of earaches. Assume that such testimony will be offered here and assuming it is true I will ask you to state your opinion as to whether those are consequences which can and in your opinion do exist now because of the injuries he sustained that you have testified to."

Counsel for defendants objected thereto on the ground that the question assumed facts not in evidence, was without proper foun-

dation, and required speculation on the part of the witness. Upon assurance of counsel for plaintiff that the missing facts would be supplied during the trial, the witness was permitted to answer the question.

Subsequently, testimony was submitted by plaintiff's counsel as follows:

Sister Patrine, plaintiff's teacher, testified with reference to plaintiff's attitude and condition after the accident as follows:

"Yes there was a change. Robert had difficulty in concentrating on the work which he was to do * * * and very frequently I had to repeat whatever I had explained to the rest of the children. * * * Very often * * * you might say he was daydreaming, not realizing what was going on. He seemed to not realize he was in a classroom at all and I would have to call his attention very very frequently to what the class was doing in order to keep him up with his work."

And that later during the fall term:

"* * * He still found it very difficult to concentrate on what he was doing and very frequently had to have his explanation given over again rather than being able to understand it the first time.

* * * * *

"* * * he was different after the accident than before but just what the cause was I was never able to tell."

Sister Elisabeth, his teacher at the time of the trial, testified:

"* * * he is very inattentive and listless.

* * * * *

"* * * As we change classes Robert may be sitting and gazing out of the window. Sometimes he is studying and doesn't realize we are changing classes * * *.

* * * * *

"We don't change seats but use different texts. He continues to do his work or gazes out of the window or something similar."

Nora Olson, who lived in an apartment adjoining that of plaintiff, testified that after the accident:

"* * * he was in bed the first weeks most of the time and gradually would stay up a little more and more but off and on he always had headaches and earaches and his headaches would result in vomiting spells.

\* \* \* \* \*

"* * * He had changed a lot though. He was listless.

\* \* \* \* \*

"* * * he would go lay down and complain about a headache * * *.

\* \* \* \* \*

"* * * he did lose a lot of weight * * *.

\* \* \* \* \*

"He was nervous."

At the close of plaintiff's case, defendants' counsel moved to strike the answers of Dr. Strathern to the foregoing and subsequent questions on the ground that the hypothetical facts assumed had not been supplied as agreed. The trial court denied this motion, and its action in overruling defendants' objections and denying the motion to strike the answer is assigned as error.

■ We believe that the evidence is sufficient to support a finding of negligence on the part of defendants proximately contributing to the accident. It is adequate to support a finding that plaintiff was within the crosswalk at the time of the impact, not only because it is undisputed that he came to rest immediately thereafter south of the south line thereof, but also from the testimony of a witness that the front wheels and bumper of defendants' cab were within such crosswalk as it stopped immediately after such impact. It follows that the jury might properly have determined that defendant driver was negligent in failing to yield the right of way to plaintiff, as required by § 169.21, subd. 2, as amended by L. 1947, c. 428, § 18; in failing to keep a proper lookout, as required by § 169.21, subd. 3; and in failing to have his cab under proper control, as required by § 169.14, subd. 3.

His negligence on these grounds must be regarded as almost wanton when it is recalled that he was familiar with this crosswalk and knew that it was customarily used by children in going to school at this time of day. He testified that he was still some 20 feet north of the crosswalk after the last northbound car had passed him. This should have given him ample time to observe pedestrian traffic on this crosswalk had his car been under the control required, in view of the use of this crosswalk by children at this time of day. If prior thereto his vision was obstructed by the northbound cars, his duty to carefully observe, to have his car under proper control, to determine whether children were crossing, and, if so, to be prepared to yield them the right of way became that much the greater. We feel that the submission of this issue to the jury under proper instructions by the trial court was correct, and that its finding thereon is amply sustained. Smith v. Barry, 219 Minn. 182, 17 N. W. (2d) 324; Himmel v. Orliski, 221 Minn. 192, 21 N. W. (2d) 605; Olson v. Evert, 224 Minn. 528, 28 N. W. (2d) 753.

■ Defendants assert that they were entitled to instructions to the effect that the rules governing conduct in sudden emergency cases were applicable to them here. We do not think such rules were applicable here. Defendant, a taxicab driver of over a year's experience in St. Peter and familiar with its streets and crosswalks, was fully aware that children were accustomed to use this crosswalk in going to school at this time of the day. He is presumed to be familiar with the law which requires that he yield the right of way to pedestrians at such crosswalks, a statutory regulation particularly applicable in the case of children. As stated in Wright v. Minneapolis St. Ry. Co. 222 Minn. 105, 110, 23 N. W. (2d) 347, 352:

"* * * The object of giving a pedestrian the right of way and requiring vehicles to slow down or stop to accord him such right is to protect pedestrians, *especially the aged and children,* from being in effect trapped by moving traffic and hit by inconsiderate and impatient drivers who insist on proceeding, heedless of dan-

ger and injury to those on the highway who are unable to protect themselves under the circumstances." (Italics supplied.)

We do not feel that the presence of a minor pedestrian upon a crosswalk which he was entitled to use, and which other minors customarily used at the time involved, was something so far beyond the anticipation or conception of a taxicab driver familiar with such crosswalk and its customary use by children at the time as to make the emergency doctrine applicable. It was the driver's duty to keep a careful lookout for pedestrians using the crosswalk, particularly children, and to yield the right of way to them where they had already commenced to cross. His acts in completely ignoring his obligation in this respect can hardly be said to have created such an unexpected situation in his mind as to require the application of the doctrine. Zobel v. Boutelle, 184 Minn. 172, 238 N. W. 49; Ind v. Bailey, 198 Minn. 217, 269 N. W. 638; Lee v. Zaske, 213 Minn. 244, 6 N. W. (2d) 793.

■ Defendants contend that the court erred in denying their motion for a directed verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law. This issue was submitted to the jury with applicable rules governing the actions of minors of plaintiff's age. We find no error in this respect. The testimony, in the light most favorable to plaintiff, indicates that at the time of the accident he was walking across the street at the crosswalk and within the lines thereof; that he had paused and looked both to his right and left before proceeding to cross; and that he had permitted northbound cars to pass in front of him. It further establishes that he was past the center line of the street when struck by defendants' cab. Certainly, such facts would not establish contributory negligence of a minor of plaintiff's age as a matter of law. Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1; McCarthy v. City of St. Paul, 201 Minn. 276, 276 N. W. 1; Demmer v. Grunke, 230 Minn. 188, 42 N. W. (2d) 1.

■ We do not find error in the trial court's admission of the opinions of Dr. Strathern, or in its failure to strike them at the

close of the testimony. The only hypothetical facts not then in evidence, which he was required to assume, were that subsequent to the accident plaintiff had become *listless, not as much interested in his studies as before, inattentive when spoken to, and complained quite often of earaches and headaches, which were accompanied by vomiting and sick stomach.* A reference to the testimony of Sister Patrine, Sister Elisabeth, and Nora Olson described above readily establishes that all such assumed facts were supplied by their testimony in accordance with the assurance of plaintiff's counsel.

It is within the discretion of the trial court for the accommodation of a witness to permit questions based upon hypothetical facts not yet in evidence, upon the assurance of counsel that such facts will later be supplied. The rule governing this situation is expressed in 20 Am. Jur., Evidence, § 796, as follows:

"* * * The court in its discretion may permit the question to anticipate proof of some of the facts, relying on the assurance of counsel that such facts will be proved later. In such a case, if the supporting evidence is not afterward given, the court should instruct the jury to disregard the opinion."

Here, the facts being adequately furnished later, we find no error in overruling defendants' objections or in denying their motion to strike the testimony of this medical expert.

■ We believe that the verdict returned in this case is not excessive. The medical testimony indicated that as a result of the accident plaintiff suffered a severe skull fracture in the right parietal region, as well as a brain concussion; that a spinal puncture performed the day following the accident revealed a bloody fluid, from which it was concluded that tearing of the vessels or membranes covering the brain had resulted; that such an injury might leave scar tissue and possible degeneration or breakdown of brain tissue; that after injuries of this kind personality changes may follow, with inattentiveness, disorientation, even up to loss of memory, and inability to concentrate as a result; that plaintiff's listlessness and other symptoms are likely to be permanent, making

it difficult in the future for him to study; that the scar tissue produces headaches and earaches, accompanied by vomiting and sick stomach, which may be intermittent and may increase in severity as time goes on; and that plaintiff's condition had not changed for the better at the time of the trial, two years after the accident.

Plaintiff was in the hospital or confined to his bed for six weeks after the accident. He has suffered headaches and earaches since that time. We do not believe that a $4,000 verdict is too large for the injuries described or that the trial court abused its discretion in refusing to set it aside as excessive, particularly when the present purchasing power of the dollar is taken into account. Nubbe v. Hardy Continental Hotel System, 225 Minn. 496, 31 N. W. (2d) 332; Aasen v. Aasen, 228 Minn. 1, 36 N. W. (2d) 27.

The order appealed from is affirmed.

