GEORGE ALEX, JR. v. JOHN JOZELICH AND ANOTHER. CLAYTON M. ANDREWS, d.b.a. GRAINBELT DISTRIBUTING COMPANY, APPELLANT.

78 N. W. (2d) 440.

July 13, 1956—No. 36,765.

*Freeman, Peterson, Hoppe & Gaughan* and *Thomas J. Burke,* for appellant.

*N. S. Chanak* and *Beaudoin, Thuet & Todd,* for plaintiff-respondent.

*Ralph Lilley,* for defendant-respondent.

DELL, CHIEF JUSTICE.

Action by George Alex, Jr., plaintiff, to recover damages for personal injuries sustained when an automobile owned and driven by defendant John Jozelich in which plaintiff was a passenger ran into and collided with the rear of a truck owned by defendant Clayton M. Andrews, doing business as Grainbelt Distributing

Company, and operated at the time by Charles M. Campbell, his employee.

The accident occurred July 11, 1953, about 12:45 p. m. on Highway No. 169 in Aitkin County. The weather was clear and the highway dry. At the time of the collision, the truck, which had been traveling north on said highway toward Hill City, had stopped momentarily in its proper lane preparatory to making a left turn onto a private driveway. Jozelich and Andrews were joined as defendants in the action subsequently instituted by plaintiff.

The jury returned a verdict in favor of plaintiff and against both defendants in the sum of $43,000. There is no claim that the award was excessive, and no appeal has been taken by defendant Jozelich. Andrews, who will hereafter be designated defendant, appeals from an order denying his motion for judgment notwithstanding the verdict or for a new trial. His principle contention on appeal is that the trial court erred in instructing the jury with reference to M. S. A. 169.32 as follows:

"* * * 'On any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway, when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed—that means whether it is practical or not—but in every event a clear and unobstructed width—even though it would be practical to stop on the pavement— a clear and unobstructed width of at least 20 feet of such part of the highway—that means the paved or traveled part of the highway or improved part—opposite such standing vehicle shall be left for the free passage of other vehicles.' You are instructed that as a matter of law the defendant truck driver violated this highway traffic regulation act and it was negligence on his part to so stop his truck. Whether or not it was the sole proximate cause of the collision which resulted or a contributing proximate cause of the collision which resulted are questions for you to determine."

It is the contention of defendant that § 169.32 is not applicable here and that in any event under the facts presented its violation would not constitute negligence as a matter of law.

It is defendant's further contention that the court erred in excluding application of the emergency doctrine to Campbell's actions by the following instructions:

"* * * This rule is only applicable, if applicable at all—and you are to decide whether it was applicable or not—to the operator of the Ford automobile [Jozelich]. * * *"

Campbell, driver of defendant's truck, was at the time engaged in making beverage sales and deliveries to various retail stores on a regular route which he followed each Saturday. Just prior to the accident he had stopped for such purpose at a store located approximately one mile south of the point of collision. Thereafter, he resumed travel on Highway No. 169 intending to make his next stop at the "Jamme Store" about a mile to the north and located on the west side of the highway, 75 to 100 feet back therefrom. A driveway thereto leads northwesterly from Highway No. 169 at about a 45-degree angle, and Campbell planned to turn left thereon without coming to a stop. While still some distance south of the Jamme driveway, he looked to his rear and saw the Jozelich car approaching him about one-half mile back on Highway No. 169. Campbell at the time was traveling about 40 miles per hour and while still approximately one-quarter of a mile south of the driveway he commenced to lessen his speed for the purpose of making the turn. When he was approximately 800 feet south of the driveway, he placed in operation the truck's directional flasher signal light which indicated his intention of turning left and which operated continuously thereafter until after the collision. At the same time he applied his footbrake which lighted the red "stop" signal light on the rear of the truck. He estimated that his speed had been reduced to approximately 20 miles per hour when he was still some 150 feet from the driveway.

When the truck was 100 feet south of the driveway, Campbell observed that, because of the closeness of a car coming toward him

from the north on the highway, it would be dangerous to turn to the left in its pathway and in what he designated "a split second" determined that it would be necessary to bring the truck to a stop. The stop was made in the proper lane of the highway to permit the oncoming car to pass, and some two or three seconds thereafter the truck was struck in the rear by the Jozelich car, the impact moving the truck some 6 to 8 feet forward on the highway.

Campbell testified that he had not driven the truck onto the right shoulder prior to stopping because of his fear that it would tip over into the ditch. Two witnesses, who were at the time located on the front steps of the "Jamme Store," testified that the truck's directional signal light was blinking to indicate an intended left turn for some 200 feet prior to the point of collision; that the truck had gradually lessened its speed and had gradually come to a stop with its signal lights still blinking; and that the Jozelich car was going over 60 miles per hour and had not reduced its speed as it neared the truck.

In a memorandum attached to the order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, the trial court stated:

"On the question of negligent stopping, and assuming the evidence most favorable to Campbell, it would appear that he made a split-second decision to stop his truck slowly and with stop light warning, but failed to look in the rear view mirror, or otherwise, for traffic approaching from the rear * * * without determining that the stop, with reference to vehicles approaching from the rear, could be made with reasonable safety. Since he admittedly did not look to the rear to determine whether or not any stop could be made with reasonable safety, and there being no excuse or justification for not looking, he * * * was negligent as a matter of law in stopping his truck, be it slowly or suddenly, * * * the fact that the oncoming car prevented his turning left in reasonable safety did not excuse or justify his stopping without regard to traffic approaching from his rear; * * *."

■ We are of the opinion that § 169.32[1] was not intended to apply in a situation, such as that here presented, where a vehicle has stopped on the highway momentarily until the driver can determine whether it is reasonably safe to turn to the left therefrom onto a private driveway. It is our conviction that this section was meant rather to relate to the parking of vehicles attended or unattended upon public highways. We are supported in this conclusion by reference to § 169.19, subd. 4, which provides that "No person shall turn a vehicle * * * from a direct course * * * upon a highway unless and *until* the movement can be made with reasonable safety, * * *." (Italics supplied.) Under certain circumstances this section would clearly impose upon a driver intending to turn left from a public highway onto a private driveway the *duty* of stopping his vehicle and delaying the movement until it could be made with reasonable safety. In jurisdictions where statutes similar to § 169.32 have been considered, like conclusions have been reached. See, Bauer v. Bahr, 240 Wis. 129, 2 N. W. (2d) 698; Neeley v. Bock, 184 Wash. 135, 50 P. (2d) 524; Fontaine v. Charas, 87 N. H. 424, 181 A. 417; General Ins. Co. v. Lewis (Utah) 243 P. (2d) 433.

Reference is made to our language in McHardy v. Standard Oil Co. 231 Minn. 493, 44 N. W. (2d) 90, and Fleenor v. Rowley, 198 Minn. 163, 269 N. W. 370, with the suggestion that therein a contrary viewpoint has been expressed. The situations involved in

[1]"Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway.

"This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such a manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

such cases were entirely dissimilar to that presented here, but if the general language of such opinions might be construed as indicative of a determination that § 169.32 was intended to apply to temporary stops made to insure safety in turning from public highways onto private driveways, to such extent these decisions are overruled. It follows here that the trial court erred in instructing the jury that under § 169.32 Campbell's actions in stopping on the highway constituted negligence as a matter of law.

■ Whether Campbell's failure to look to his rear a second time before stopping constituted negligence appears to be a question for the jury's determination. Section 169.19, subd. 4, is intended to regulate a driver's actions in turning from a public highway and may require that he stop before making such a turn until he ascertains that it can be made with reasonable safety. Reasonable safety, of course, would require that he observe oncoming traffic as well as traffic approaching from his rear before making a left turn. We do not feel, however, that in the present case Campbell's failure to look to his rear more than once constituted negligence as a matter of law as the court determined. He was required to observe closely the car coming toward him from the north to ascertain which would be the safer course to follow—to turn left before it had passed, or to wait until after it had gone by. He had seen that the car approaching from the rear was approximately one-half mile back and could assume that his own actions in lessening the speed of the truck, signaling his intention of turning to the left, applying his brakes, signaling his intention of stopping and gradually halting the truck must all have been witnessed by the driver of such car; and that his attention could therefore be directed to the other car. These factors might satisfy a jury that his failure to look to the rear a second time did not constitute negligence and a finding to that effect would not be inconsistent with the evidence outlined. Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Howard v. Marchildon, 228 Minn. 539, 37 N. W. (2d) 833; Landeen v. DeJung, 219 Minn. 287, 17 N. W. (2d) 648. It follows that the trial court's instruction to the contrary was erroneous.

■ It is contended by defendant that the principle of the emergency doctrine must be applied to the actions of Campbell in determining whether he was negligent. We do not agree with this contention. The doctrine becomes applicable only if it be established that there existed a sudden emergency or peril not occasioned in any respect by the negligence of the party seeking to invoke the rule. The ordinary, customary, and expected movements of automobile traffic upon public highways cannot be regarded as so perilous as to require that the standards applicable in emergencies be applied in judging the reasonableness of the movements of drivers meeting such highway traffic. Seitzer v. Halverson, 231 Minn. 230, 42 N. W. (2d) 635; Zobel v. Boutelle, 184 Minn. 172, 238 N. W. 49.

Here Campbell's testimony established that he was aware of both the oncoming car and the car approaching from the rear. There is nothing to indicate that he observed that either car was traveling at an excessive speed, or had deviated from its proper traffic lane or otherwise failed to comply with statutory traffic regulations. It follows that since no sudden emergency or peril confronted Campbell, he must have had a reasonable time to determine what course of action he should take and accordingly his conduct must be judged by the ordinary rules of negligence.

■ No issue is raised as to the award being excessive, and the defendant Jozelich has not appealed. Therefore, in order to avoid unnecessary expense and delay a reversal is ordered and a new trial granted only as to the issue of the negligence of defendant Andrews.

Reversed and a new trial granted as to the issue of negligence on the part of defendant Andrews, doing business as Grainbelt Distributing Company.