[No. 22884. Department Two. March 4, 1931.]

THE STATE OF WASHINGTON, *on the Relation of T. Irving Potter et al., Respondents,* v. CHARLES R. MAYBURY, *as Director of Licenses, et al., Appellants.*[1]

[1]Reported in 296 Pac. 566.

*The Attorney General* and *Lester T. Parker, Assistant,* for appellants.

*Rummens & Griffin* (*Smith Troy* and *Heaney & Veach,* of counsel), for respondents.

BEALS, J.—Relators instituted this action by filing a complaint naming as defendants Charles R. Maybury, director of licenses, Ewing D. Colvin, as prosecuting attorney for King county, and John B. Wright, as justice of the peace for Seattle precinct. It was alleged that relator T. Irving Potter was the owner of letters patent granted by the United States of America, covering improvements in refrigerating machinery; that Mr. Potter, for more than two years, had been selling undivided interests in these letters patent under a uniform written agreement, a copy of which was attached to the complaint; that Mr. Potter desired to continue to offer for sale, and sell, further undivided interests in his patent; that relator G. E. Bahr was an agent of Mr. Potter, engaged in finding purchasers for such undivided interests. It was further alleged that defendant Maybury, as director of licenses of the state of Washington, had appeared before defendant John B. Wright, as justice of the peace, and sworn to a complaint charging relators with the offense of violating the "Securities act" of the state of Washington, Mr. Maybury contending that relators were selling securities without having procured a license; that relators had been arrested pursuant to such complaint, and were at liberty on bail pending a hearing before the justice; that the defendants were threatening to issue other complaints against relators, if relators should sell, or offer for sale, any further interests in the letters patent; that relators were engaged in a lawful business, and, in selling undivided interests in the patent without having first procured a license, were violating no

law of the state of Washington; that relators had no plain, speedy or adequate remedy at law, and were entitled to injunctive relief from a court of equity. Relators prayed for a decree enjoining defendants from prosecuting against relators the criminal charge referred to in relators' complaint, and restraining defendants from proceeding further against relators in an endeavor to prosecute them for any supposed violation of the statutes of the state of Washington, in connection with any matters referred to in relators' complaint.

An injunction *pendente lite* was issued pending trial of the action, a demurrer interposed by defendants was overruled, and the cause came on for trial upon defendants' answer and an agreed statement of facts, which was reduced to writing, signed by the attorneys for the respective parties, and filed in the action. The trial resulted in a decree in relators' favor, enjoining defendants from proceeding further against relators, from which decree defendants appeal to this court.

■ Respondents contend, in the first place, that the decree should be affirmed, for the reason that no statement of facts is contained in the record before us. The decree recites the appearance of the parties on the date fixed for the trial, that the agreed statement of facts was read into the record, and that the parties thereupon announced that they would stand upon their pleadings and the agreed statement which is before us as part of the transcript on appeal. It is not denied that the agreed statement of facts set forth in the transcript is the agreed statement upon which, together with the pleadings, the action was tried. As the decree itself expressly refers to this statement, and identifies it, and recites that each of the parties rested thereon and offered no further evidence, we conclude

that the agreed statement of facts is properly before us and should be considered.

Respondents contend, in the first place, that the selling of undivided interests in the patent right does not come within the scope of the "Securities act" (Laws of 1923, ch. 69, p. 207; Rem. 1927 Sup., § 5853-1 *et seq.*), and contend further that, if it be held that such sales come within the purview of the act, the act is void as in violation of article I, § 8, of the Constitution of the United States, and of the fourteenth amendment thereto. Relators also contend, and the trial court in entering a decree in their favor held, that, under the circumstances disclosed by the record, respondents are entitled to relief in a court of equity by way of injunction.

Appellants argue, in the first place, that, as a general rule, equity will not enjoin the prosecution of criminal proceedings, and that in the case at bar the record discloses no facts sufficient to justify the intervention of a court of equity, as respondents have at their command a plain, speedy, and adequate remedy at law, by way of appeal from any judgment which may be entered against them in the criminal proceeding.

It is, of course, true that equity exercises no criminal jurisdiction. In cases where it appears that public officers are threatening to proceed against individuals under a criminal statute which is unconstitutional, or for any reason invalid, and where it appears that such action by the authorities will result in a direct invasion of property rights which will result in irreparable injury, equity will interfere by way of injunction to restrain the officers of the government from proceeding. The rule is well stated in 32 C. J., page 280, title "Injunctions," as follows:

"It is only where the statute or ordinance is unconstitutional or otherwise invalid and where in the at-

tempt to enforce it there is a direct invasion of property rights resulting in irreparable injury that an injunction will issue to restrain the enforcement thereof. Both of these elements are indispensable, and the latter element is not present where it appears that the injury or loss to plaintiff's business or rights of property would be only such as would incidentally flow from the arrest and prosecution thereunder. Courts will not interfere by injunction where the injury inflicted or threatened is merely the vexation of arrest and punishment of complainant who is left free to litigate the questions of unconstitutionality of the statute or ordinance or its construction or application in making his defense at the trial or prosecution for its violation.''

In the case of *Brown v. State,* 59 Wash. 195, 109 Pac. 802, an action brought to review and reverse a conviction of the offense of practicing dentistry without a license, this court, in affirming the judgment of the lower court, which had sustained a demurrer to the plaintiff's complaint, said:

''A court of equity has no jurisdiction to review or vacate the judgment of a criminal court, or to restrain the execution of a criminal sentence.''

In the case of *City Cab etc. Co. v. Hayden,* 73 Wash. 24, 131 Pac. 472, Ann. Cas. 1914D 731, L. R. A. 1915F 726, it was held that the validity of certain municipal regulations, sought to be enforced against a corporation owning motor vehicles used for public transportation, could be tested in an equitable action brought for the purpose of enjoining the enforcement of such regulations. It was decided that the regulations which had been promulgated by the city authorities were within their lawful authority, and the decree entered by the superior court in favor of the plaintiff was reversed. The question of the validity of municipal ordinances, or regulations promulgated by city officials pursuant thereto, regulating public conveyances, pres-

ents a different question from that now before us, in which the matter of the attempted sale of private property is involved.

It may be assumed that in many cases, as in this, a party accused of violation of such a law as is here in question would find it extremely convenient to try out the question of his liability under such law in a court of equity, but equitable jurisdiction does not depend upon questions of convenience, it being, as above stated, the general rule that a chancellor will be loath to interfere with a court of law, when the latter is undertaking to proceed to hear and determine a prosecution instituted under a criminal or quasi-criminal statute. The case last cited is not controlling upon the question here presented.

In the later case of *Huntworth v. Tanner,* 87 Wash. 670, 152 Pac. 523, Ann. Cas. 1917D 676, in an action brought to restrain a threatened arrest and prosecution for alleged violation of initiative measure No. 8, generally referred to as the ''Employment Agency law,'' the case of *Brown v. State, supra,* was distinguished, and it was held that a court of equity should, under the facts shown, grant the decree prayed for by the plaintiff. Mr. Huntworth, in his complaint, alleged that he had, for some time, been engaged in business as an employment agent, representing teachers for compensation in procuring for them positions; that his business was established; and that to discontinue it would result in its total destruction. To this complaint, a demurrer was interposed, which was, by the trial court, sustained. Mr. Huntworth had not been arrested; his arrest was only threatened.

It is evident that a stronger case was presented by Mr. Huntworth than that stated by relators in their complaint herein. If the law which Mr. Huntworth attacked applied to him, his business was completely

destroyed, as the initiative measure absolutely forbade the collection of any fee by an employment agency. In the case at bar, no attempt has been made to keep Mr. Potter from selling undivided interests in his patent, the question arising solely upon his refusal to apply to the director of licenses for a permit under the "Securities act" to offer such property for sale. This, under the law, he may or may not be obligated to do, but it is evident that the question is very different from that presented in the case of *Huntworth v. Tanner, supra,* in which a majority of this court was of the opinion that the act did not apply to the business conducted by the plaintiff.

In the case at bar, it appears that a criminal prosecution against respondents had been instituted, and was pending when this action was brought. This case is, in that respect, unlike the two cases last cited. In this case, no question of public interest or convenience is involved, the matter concerning only the alleged right of relators to offer for sale personal property, without first applying for leave to sell such property under the "Securities act."

The supreme court of California, in the case of *Sullivan v. San Francisco Gas & Electric Co.,* 148 Cal. 368, 83 Pac. 156, held that a court of equity should not enjoin the institution of a criminal prosecution against persons engaged in the business of house moving, for alleged violation of an ordinance imposing a penalty on every person who should obstruct or interfere with any electric line. In that case, the plaintiffs did not attack the validity of the ordinance, but argued that their acts did not constitute any violation thereof. In the later case of *Los Angeles Title Ins. Co. v. City of Los Angeles,* 52 Cal. App. 152, 198 Pac. 1001, the supreme court of California followed the rule laid down in the earlier case, and held that a court of

equity should not enjoin the prosecution of a person engaged in the business of writing title insurance for alleged violation of a municipal ordinance imposing a license fee on different businesses, it being contended by the plaintiff, who sought an injunction, that its business did not come within the terms of the ordinance, and that the threatened prosecution would result in irreparable damage to its business. In the course of its opinion, the court said:

"If it be true in fact that the plaintiff in the course of its business limits itself to the business of an insurance company, then it is not subject to the provisions of the ordinance, or, in other words, the ordinance does not apply to the plaintiff and its business. The ordinance does not in any way disregard the provisions of the constitution to which reference has been made. This being so, the plaintiff's action is one wherein it seeks to enjoin certain officers of the defendant city, charged with the enforcement of its laws, from wrongfully prosecuting the plaintiff by accusing it of the commission of a misdemeanor in that it has violated the provisions of a valid ordinance. The case is practically the same as it would be if these officers were threatening to prosecute the plaintiff for conducting a grocery business without obtaining a license required by the ordinance, when in fact the plaintiff was not conducting or proposing to conduct a grocery business in the city of Los Angeles. It seems very clear that an injunction will not be granted to protect any person from prosecution for the alleged commission of a criminal offense by proving to a court of equity that he is not guilty of such offense. The court having jurisdiction over criminal offenses is the forum in which such questions of fact must be determined."

The supreme court of the United States, in the case of *Fenner v. Boykin*, 271 U. S. 240, said:

"*Ex parte Young,* 209 U. S. 123, and following cases have established the doctrine that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers

from instituting criminal actions. But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate. Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection. The Judicial Code provides ample opportunity for ultimate review here in respect of federal questions. An intolerable condition would arise if, whenever about to be charged with violating a state law, one were permitted freely to contest its validity by an original proceeding in some federal court. *Hygrade Provision Co. v. Sherman,* 266 U. S. 497, 500.''

Respondents rely upon the opinion of the supreme court of the United States in the case of *Terrace v. Thompson,* 263 U. S. 197, in which a decree of the United States district court for the western district of Washington, dismissing a bill brought by a property owner for the purpose of enjoining the *Attorney General* of this state from enforcing the state alien land law, was affirmed. The court, speaking through Mr. Justice Butler, held that the state statute against ownership or leasing of real estate by aliens, was not in conflict with the due process and equal protection clauses of the fourteenth amendment to the Constitution of the United States, or the treaty between the United States and Japan. The *Attorney General* questioned the jurisdiction of the court to grant equitable relief, even though the statute was unconstitutional. In the course of its opinion, the court said:

''The unconstitutionality of a state law is not of itself ground for equitable relief in the courts of the United States. That a suit in equity does not lie where there is a plain, adequate and complete remedy at law

is so well understood as not to require the citation of authorities. But the legal remedy must be as complete, practical and efficient as that which equity could afford. *Boise Artesian Water Co. v. Boise City,* 213 U. S. 276, 281; *Walla Walla City v. Walla Walla Water Co.,* 172 U. S. 1, 11, 12. Equity jurisdiction will be exercised to enjoin the threatened enforcement of a state law which contravenes the Federal Constitution wherever it is essential in order effectually to protect property rights and the rights of persons against injuries otherwise irremediable; and in such a case a person, who as an officer of the state is clothed with the duty of enforcing its laws and who threatens and is about to commence proceedings, either civil or criminal, to enforce such a law against parties affected, may be enjoined from such action by a federal court of equity.

. . . .

"If, as claimed, the state act is repugnant to the due process and equal protection clauses of the Fourteenth Amendment, then its enforcement will deprive the owners of their right to lease their land to Nakatsuka, and deprive him of his right to pursue the occupation of farmer, and the threat to enforce it constitutes a continuing unlawful restriction upon and infringement of the rights of appellants, as to which they have no remedy at law which is as practical, efficient or adequate as the remedy in equity. And assuming, as suggested by the attorney general, that after the making of the lease the validity of the law might be determined in proceedings to declare a forfeiture of the property to the state or in criminal proceedings to punish the owners, it does not follow that they may not appeal to equity for relief. No action at law can be initiated against them until after the consummation of the proposed lease. The threatened enforcement of the law deters them. In order to obtain a remedy at law, the owners, even if they would take the risk of fine, imprisonment and loss of property, must continue to suffer deprivation of their right to dispose of or lease their land to any such alien until one is found who will join them in violating the terms of the enactment and take the risk of forfeiture. Similarly Nakatsuka must continue to be deprived of his

right to follow his occupation as farmer until a land owner is found who is willing to make a forbidden transfer of land and take the risk of punishment. The owners have an interest in the freedom of the alien, and he has an interest in their freedom, to make the lease. The state act purports to operate directly upon the consummation of the proposed transaction between them, and the threat and purpose of the attorney general to enforce the punishments and forfeiture prescribed prevent each from dealing with the other. *Truax v. Raich, supra.* They are not obliged to take the risk of prosecution, fines and imprisonment and loss of property in order to secure an adjudication of their rights. The complaint presents a case in which equitable relief may be had, if the law complained of is shown to be in contravention of the Federal. Constitution.''

It was held that the state statute was a valid exercise of the powers of the state, and the decree of the district court was affirmed. Two of the justices were of the opinion that there was no justiciable question involved, and that the case should have been dismissed on that ground. It does not appear that, prior to the bringing by Mr. Terrace of his action in the United States court, any proceeding by way of a criminal prosecution had been instituted against him in the state courts. It is also evident that the situation differed materially from that which confronted relators here, as, under the act of which Mr. Terrace complained, not only was the lessor subject to penalty, but the lessee was also liable to prosecution, and the real property which would be the subject matter of the contract between the parties, was liable to forfeiture. Such a situation would appeal more strongly to a court of equity than do the circumstances here present. We conclude that the case at bar is not controlled by the opinion of the supreme court of the United States in the case cited.

Respondents urge that, as the life of letters patent is limited to seventeen years, the matter of time is to them of great importance, and that for that reason, among others, a court of equity should intervene and determine their rights. It is not easy to understand how a more speedy determination of the question could be had in a court of equity than in the law court before which the prosecution was already pending. Prosecutions under the criminal statutes have precedence, and it would seem that the matter should reach a final determination as speedily in one forum as in the other.

We conclude that the record before us contains no justification for the granting by a court of equity of the decree appealed from, and the same is accordingly reversed, with instructions to the trial court to dismiss the action.

TOLMAN, C. J., MILLARD, BEELER, and FULLERTON, JJ., concur.