[No. 23454. Department Two. May 9, 1932.]

CHARLES E. GACHES *et al., Respondents,* v. HARRY DAW *et al., Appellants.*[1]

[1]Reported in 10 P. (2d) 1111.

*L. B. Schwellenbach,* for appellants.

*R. V. Welts, Poe, Falknor, Falknor & Emory,* and *Preston, Thorgrimson & Turner,* for respondents.

MAIN, J.—Charles E. Gaches and wife brought this action to recover damages for personal injuries which Mrs. Gaches sustained in an automobile accident. The defendants, Harry Daw and wife, denied liability, and presented a cross-complaint in which they sought damages for personal injuries sustained by Mrs. Daw arising out of the same accident. The cause was tried

to the court and a jury, and resulted in a verdict in favor of the plaintiffs in the sum of $2,500. The defendants moved for judgment notwithstanding the verdict, and, in the alternative, for a new trial, both of which motions were overruled and judgment was entered upon the verdict, from which they appeal.

The facts are these: The accident happened on the Pacific highway, about eleven miles south of Mount Vernon, at about seven o'clock p. m., October 22, 1929. Near the point where the accident happened, the highway forms a "Y." What is referred to as the old road curves to the right, and goes by the way of the town of Stanwood. The new road or cut-off curves to the left, and is the shorter way to Everett and Seattle. The highway was paved, and on the west side thereof there was a dirt shoulder about four feet wide. Off the dirt shoulder there was a slight depression or shallow ditch. Around the curve to the right, there was a guard rail. As the "Y" was approached, there was a road sign on the right-hand side.

The appellants were proceeding south, intending to go to Seattle, in an automobile owned by them but driven at the time by Joseph W. Daw, a brother of Harry Daw. When they approached the "Y," they proceeded around the curve to the right for a short distance, and then, being uncertain whether that was the direct road to Seattle, stopped. The automobile was backed around the curve, and, as the occupants of the Daw car testified, the wheels thereof were placed upon the dirt shoulder. Harry Daw, who, with Mrs. Daw, was riding in the rear seat of the automobile, got out and went back to the road sign.

An automobile, driven by Mrs. Gaches and of which she was the only occupant, came from the north, and she, too, was intending to go to Seattle. She testified

that the Daw car had been stopped in the middle of the pavement, and that, as she approached, she could see the red tail light, and slowed down to a speed of about twenty miles per hour. When she was at a point near the road sign, she testified that Mr. Daw suddenly stepped out from the side of the road, ten or twelve feet in front of the car, with his hat in his hand, and waved at her. She at first thought it was a hold-up, and was very much frightened. She swerved the car to the left to avoid hitting Mr. Daw, and immediately collided with the Daw car, which was about twenty-five feet distant. The left front of the car that Mrs. Gaches was driving struck the right rear of the Daw car, with the result that both Mrs. Gaches and Mrs. Daw were seriously injured.

As to the manner in which the accident happened, Mrs. Gaches testified:

"I was going about forty miles an hour. As I approached the cut-off I saw a red light a little bit to the left of the center of the pavement. I was driving on the right-hand side of the highway. There was space between the light and my side of the highway to drive through. I slowed up to see what it was, whether it was construction work or an automobile or what it was. I slowed up to about twenty-five miles an hour. Maybe a little bit less. I was just about ready to toot my horn, because I realized it was a car; I could see the red light and headlights ahead of it; I was just ready to toot my horn, or had tooted it when a man jumped in front of me, about ten or twelve feet in front of my car on the paving in front of me. He had his hat in his hand and waved it and scared me; I thought at first it was a hold-up. I swerved my car to the left to avoid—get away from him. I would have hit him if I had not swerved. I watched him to be sure that I got away from him. My car was slanting naturally to get away from him. I was watching him and when I finally put my eyes on the highway there was the car, it was too close to do anything. My left, the driver's

side of my car, hit the right side of their car. This man scared me to death.''

As to the manner of the happening of the accident, Harry Daw testified:

''I went to get out, but I could not get out, because there was a fence there, and he backed up some more so he cleared the fence. Then I got out of the car, the right rear wheel was off the paving and the front right wheel was on the paving. I told him to back up some more and he did. I looked and we were off the paving, so he stopped and I walked sideways to the rear of the car and then walked back to the sign. As I was walking back to the sign, I saw a car coming; it seemed to be coming very fast and as I got right to the sign post it was right close to me. I stepped back off the road. As it passed me, I would say it was two feet, not any more, from the right-hand side of the road. I waved my hand and tried to call her attention to pull over to the left for fear she would hit my car. My light was burning, I could see ahead. I no more than waved twice and the thing was over, I saw my car go over across the road; I saw her spin around the center of the road, and I went over and jumped on the running board of my car. She was going at a terrific rate of speed. I should estimate between forty and fifty miles an hour. The speed of the car did not decrease at any time up until the time she came up there, at the time I waved my hand. I was on the gravel. My hat was in my hand; I did not stand out in front of the car.''

Whether the accident happened in the manner in which Mrs. Gaches testified or in the manner in which Mr. Daw testified, in which he was corroborated by his wife and brother, presented purely a question of fact, and the jury, by its verdict, sustained the facts as testified to by Mrs. Gaches.

The first question is whether Mrs. Gaches, at the time of the accident, was guilty of contributory negligence, as a matter of law. If the facts are as testified to by her, she was placed suddenly in a position of

peril by the act of Mr. Daw, and was very much frightened, as well she might be. Under such circumstances, the jury had a right to find that she acted in a way the emergency seemed to require, and was not guilty of contributory negligence as a matter of law.

This court has never been over-nice about scrutinizing the action of one who has been placed in peril by the negligence or wrongful act of another, and it has been uniformly held that, if the minds of reasonable persons may differ as to whether the act was that of an ordinarily prudent person, the question was one for the jury. *Sheffield v. Union Oil Co.*, 82 Wash. 386, 144 Pac. 529; *Allen v. Schultz*, 107 Wash. 393, 181 Pac. 916, 6 A. L. R. 676; *Watkins v. Interstate Coach Co.*, 145 Wash. 221, 259 Pac. 393.

Mrs. Gaches was not guilty of contributory negligence, as a matter of law, under the circumstances, in failing to stop her automobile before it struck the Daw car. Neither was she guilty of contributory negligence, as a matter of law, in attempting to pass the Daw car on the right-hand side, as she testified it was her intention as she approached, if, in fact, that car was parked in the center of the highway. *Grein v. Gordon*, 280 Pa. 576, 124 Atl. 737, 34 A. L. R. 1511; 42 C. J. 1016; 1 Blashfield, Cyclopedia of Automobile Law, page 448.

But it is said that, by Rem. 1927 Sup., § 6362-41, subd. 2, which provides that vehicles proceeding in the same direction on overtaking another vehicle or overtaking any person riding or driving any animal shall pass to the left, is applicable, and that it would have been negligence for Mrs. Gaches to have passed to the right. That section refers to vehicles "proceeding" in the same direction, and is not applicable to a stationary object. If an automobile is stopped in the center of the highway, it is the same as any other

stationary object in that position, and the rule as to it would be the same. To require all vehicles approaching a stationary object in the center of the highway to pass to the left thereof would, in many instances, greatly increase the hazard.

Neither was Mrs. Gaches guilty of contributory negligence, as a matter of law, in approaching the automobile in the center of the highway at the speed that she did. She testified that she had been traveling at about forty miles an hour, and, when she saw the red light, she slowed down to twenty or twenty-five miles, that there was ample room for her to pass on the right-hand side of the parked car, and that, as she approached, she was aware that it was an automobile. The question of whether she approached at too great a speed was one of fact, and not one of law.

The next question is whether the trial court erred in submitting the case to the jury. The appellants complain of a number of instructions given as well as of the refusal of the trial court to give certain requests.

In instruction No. 6, the court told the jury that, if they found certain facts which were, in substance, the facts as testified to by Mrs. Gaches, and that she acted as a prudent person would have acted under the same circumstances, she would not be guilty of contributory negligence.

It is said that this instruction is bad because it did not embody the element of whether the resulting injury could have been prevented after the peril had passed. But we think the instruction is not bad for this reason. If the facts are as testified to by Mrs. Gaches, there was no opportunity for her to have avoided the collision after the peril had passed. It was almost instantaneous.

It is also said, with reference to that instruction and instruction No. 7, that they are defective, in that

they are argumentative. Instruction No. 6, as indicated, states that, if the jury found certain facts and that Mrs. Gaches acted as a reasonably prudent person should under the circumstances, she would not be guilty of contributory negligence. As we view it, this was a proper instruction to give. There can be no objection to the trial court's stating to the jury what, if they find certain facts, their conclusion should be.

Instruction No. 7 told the jury that it was material, as bearing on the question of the negligence of Mrs. Gaches, for Mrs. Gaches to show her motive and belief

" . . . arising out of her conduct in the operation of the automobile which she was driving when the defendant Harry Daw, under the attendant circumstances, attempted, if you find such to be the fact, to flag the car driven by the plaintiff Adda Gaches."

We see no objection to this instruction. The state of mind of Mrs. Gaches, caused by the act of Mr. Daw, was material as bearing upon the question of her negligence, and this is what the instruction in fact told the jury.

In instruction No. 8, the jury were told that, if Mrs. Gaches was not driving her automobile in a careful and prudent manner, or that, even if she was driving at a rate of speed less than forty miles an hour, or was driving at a rate of speed greater than was reasonable and proper under conditions existing at the time, or was driving at a rate of speed such as would unduly or unreasonably endanger the life, limb or property of other persons, she would be guilty of negligence.

In instruction No. 9, the jury were told that, if the appellants stopped their car on the paved portion of the highway, when it was practicable to leave the vehicle standing off the highway, then they were guilty of negligence, and that, in no event, could the

appellants leave their automobile standing, whether attended or unattended, on the public highway unless a clear and unobstructed width of not less than sixteen feet from the main traveled portion of such highway opposite such standing vehicle should be left free for the passage of other vehicles, and that, if the appellants so stopped their automobile, then they would be guilty of negligence as a matter of law, and that, if such negligence was the sole and proximate cause of the accident, they could not recover in this action as against the respondents. This instruction is based upon Rem. 1927 Sup., § 6362-47, which is one of the sections of the vehicle operation act, and was a proper instruction to give.

In instruction No. 12, the jury were told that, if the appellants stopped their automobile on the highway in a stationary position in the middle thereof, and there was sufficient space on the right-hand side of the vehicle for other vehicles to pass safely, then Mrs. Gaches, in approaching this standing automobile from the rear, had a legal right to use the unoccupied portion of the roadway on the right-hand side of the standing vehicle, if it was so standing, as long as she exercised such care as a reasonably prudent person, similiarly situated, would have used, and such as the circumstances required. The objection to this instruction is answered by what has already been said.

In instruction No. 13, which appears to be the one to which the appellants principally object, the jury, after certain preliminary statements, were told that it was only when the light blocks the highway, or was so placed as to indicate that the passage "is so narrowed as not to afford a safe passage within the speed limit, that he is chargeable with negligence if he does not approach with his vehicle under control." The part of the instruction specially objected to is almost in the

identical language as that used by this court in the case of *Martin v. Puget Sound Electric Railway*, 136 Wash. 663, 241 Pac. 360, and the giving of it was not error. It is recognized that the instruction is supported by the case cited, but that case is criticized, and, it is claimed, does not announce the correct rule. We are not disposed to depart from the holding in that case, and the rule there stated does not appear to us to be subject to the criticism that is directed against it.

There was no error in the failure of the court to give the requested instructions. The argument in support of these requests has, in part, been answered by what has hereinbefore been said. The requests, in so far as it would have been proper to give them, were sufficiently covered in the instructions given. The instructions must be read as a whole, and, while there is a good deal of objection to the instructions given in this case, we are, nevertheless, constrained to believe that they presented the issues to the jury with sufficient clearness, and that the jury understood the issues of fact which they were to determine.

The judgment will be affirmed.

TOLMAN, C. J., BEALS, and MILLARD, JJ., concur.

HOLCOMB, J. (dissenting)—I agree with the majority opinion in deciding that all questions respecting the contributory negligence of respondent and of the negligence of appellants were for the jury to decide as questions of fact.

I am compelled to disagree with the majority in the rejection of the application of Rem. 1927 Sup., § 6362-41, subd. 2, prescribing the rule of the road relating to vehicles proceeding in the same direction on overtaking another vehicle, that such overtaking vehicle shall pass to the left. It is said that this statutory rule

" . . . is not applicable to a stationary object. If an automobile is stopped in the center of the highway, it is the same as any other stationary object in that position, and the rule as to it would be the same. To require all vehicles approaching a stationary object in the center of the highway to pass to the left thereof would, in many instances, greatly increase the hazard."

Mrs. Gaches testified that she knew that the red light indicated a car and that she saw the headlights ahead of it. Therefore, it was not a mere obstruction in the highway on which she was traveling, but another car headed in the same direction. If the statute referred to does not govern that situation, then there is no rule of the road controlling such a situation, and drivers of overtaking cars may pass to either side, or stop, as may please them. The law should be as requested in instructions by appellants.

The question was so close as to the controlling negligence of both parties that, in my opinion, the theory of the defense was not properly submitted to the jury, and one or both of the instructions requested by appellants should have been given.

Particularly for the reason that I cannot agree with the observations of the majority that an automobile situated as was that of appellants at the time on the highway was to be considered as nothing but a stationary obstruction, I dissent.