[No. 29956.   Department One.   October 1, 1946.]

J. W. Cochran, *Appellant,* v. W. C. Nelson, *Respondent.*[1]

*Edgar M. Swan,* for appellant.

*James P. Rogers,* for respondent.

Jeffers, J.—This is an appeal by plaintiff, J. W. Cochran, from a judgment of dismissal entered by the court after a trial on the merits.

The amended complaint alleged in substance that, on or about September 23, 1944, defendant, W. C. Nelson, as auctioneer, conducted a public sale in Cowlitz county and, in the course of such sale, sold to plaintiff one Zenith washing machine for the sum of $122.50; that, at the time of the sale,

[1]Reported in 173 P. (2d) 769.

defendant stated that he wanted to get the highest price possible for all articles sold; that, during all the times mentioned in the amended complaint, the office of price administration was an agency of the United States government and, under the laws of the United States, had authority to, and did, establish maximum or ceiling prices on used washing machines, including the kind referred to above; that, at the time of the sale, the maximum ceiling price of the washing machine purchased by plaintiff was $27.50.

It is further alleged that, in selling the washing machine to plaintiff for $122.50, defendant wrongfully and unlawfully overcharged plaintiff in the sum of $95, and that, under the law and regulations of the office of price administration, defendant is liable to plaintiff in an amount equal to three times the amount of the overcharge, or $285.

The amended complaint then refers to maximum price regulation No. 372, which, it was alleged, was promulgated by the office of price administration and was in effect at the time of such sale.

Judgment was asked against defendant for the sum of $285, as damages, and $100 attorney's fee.

Defendant, in his answer, admitted and denied certain allegations of the amended complaint not inconsistent with his affirmative defense, wherein it is alleged that the washing machine purchased by plaintiff was bought from Cowlitz county, which at all times prior to the purchase by plaintiff owned such machine and, as a result of the sale to plaintiff, received the purchase price; that defendant was, in the transaction referred to in plaintiff's amended complaint, acting as the agent of Cowlitz county in conducting the public auction sale.

Defendant asked that the action be dismissed with prejudice.

The cause came on for hearing before the court on December 10, 1945, at which time witnesses were sworn and testified. After the conclusion of the trial, the court took the case under advisement and thereafter, on February 1, 1946, entered a judgment dismissing the action. From this judgment plaintiff has appealed.

There is little, if any, dispute as to the facts herein, as appellant admits in his brief that respondent was employed by and acting for Cowlitz county in conducting the sale. The material facts may be summarized as follows: Respondent, on September 23, 1944, acting in the capacity of an auctioneer and as agent for Cowlitz county, conducted a public sale of personal property owned by the county. This property consisted of equipment and appliances formerly used in the county hospital. The washing machine here in question was a part of this property.

Before the sale, respondent announced to the bystanders and within the hearing of appellant, that he was selling county property, and that he was required to sell to the highest bidder. At the sale, appellant, as the highest bidder for the washing machine, became its purchaser for the sum of $122.50. Appellant paid the purchase price to Gertrude Rivers, chief deputy in the county treasurer's office, and a receipt for the purchase price was issued by her and given to appellant. There was no claim, and certainly no proof, that respondent ever received the purchase price of this machine, or any part of it.

Shortly after the sale, this action was instituted by appellant against respondent. Cowlitz county was not made a party to the action.

We are of the opinion there are two questions raised by appellant's assignments of error which merit consideration and discussion: (1) Did the trial court, in view of the disposition it made of this case, err in refusing to make and enter findings of fact? (2) Did the court err in dismissing the action?

■ We are of the opinion the trial court did not commit error in refusing to make and enter findings of fact in this case. We stated in *Lamar v. Anderson,* 71 Wash. 314, 128 Pac. 672:

"Error is predicated upon the failure of the lower court to make findings. The judgment being one of dismissal, no findings were required."

See, also, *Wise v. Vaughan,* 160 Wash. 505, 295 Pac. 126.

The principal question in this case is raised by the judg-

ment of dismissal. We are of the opinion the question to be decided may be stated as follows: Is an auctioneer who sells property of a municipal corporation at a price which is in excess of the maximum price fixed by the office of price administration, under the powers conferred upon it by the emergency price control act of 1942 (56 Stat. 23, 50 U.S.C.A. (App.), § 901 *et seq.*), liable for treble the amount of the overcharge, under § 205 (e) of the act (56 Stat. 34, § 205 (e) ) ?

Appellant bases his right to recover against respondent upon the provisions of § 205 (e), *supra*. This section will be found in 50 U.S.C.A. (App.), as § 925 (e), which reads as follows:

"If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: *Provided, however,* That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the

violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations. Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction. A judgment in an action for damages under this subsection shall be a bar to the recovery under this subsection of any damages in any other action against the same seller on account of sales made to the same purchaser prior to the institution of the action in which such judgment was rendered."

We are of the opinion the question here presented narrows down to whether or not respondent was a "seller" of the property purchased by appellant under § 205 (e), *supra*.

Section 302 (a) of the original act, as amended, will be found as § 942 (a), of 50 U.S.C.A. (App.), and is the only section which purports to define the word "seller." We quote:

"The term 'sale' includes sales, dispositions, exchanges, leases, and other transfers, and contracts and offers to do any of the foregoing. The terms 'sell', 'selling', 'seller', 'buy', and 'buyer', shall be construed accordingly."

██ The emergency price control act, as indicated by its title and its provisions, was emergency legislation. Many of the provisions of the act are entirely foreign not only to the principles of the common law, but also to our statutory law. The provisions of the section with which we are here particularly concerned place a limitation upon what the owner of goods could receive for them if he sold them. We are of the opinion the provisions of this section with which we are here concerned should be strictly construed, for the reasons stated in *Husers v. Papania,* 22 So. (2d) (La. App.) 755, hereinafter referred to.

It will be noticed that § 205 (e) of the act creates a liability against the "seller." It authorizes an action for overcharges to be brought against the "seller."

██ It is a rule of general application that in the absence of anything in the statute to the contrary, in arriving at the

meaning of words used by a legislative body, those words must be given their generally accepted meaning, or, as sometimes stated, words are to be taken as understood in their ordinary and popular sense. *Featherstone v. Dessert,* 173 Wash. 264, 22 P. (2d) 1050; *Parker v. Department of Labor & Industries,* 14 Wn. (2d) 481, 128 P. (2d) 497.

■ The term "auctioneer" is commonly understood to mean a person who sells or makes a business of selling by auction; on the other hand, a seller is one who disposes of his property to another for a consideration, usually money.

It seems to us the term auctioneer has such a well-known meaning, indicating one who sells not his own goods but the goods of another, that there could be little, if any, doubt in the minds of purchasers at an auction sale that the auctioneer was selling the goods of a third party, even in the absence of an announcement to that effect by the auctioneer. However, in this case, the auctioneer made such an announcement, as hereinbefore stated.

■ The identical question here presented was decided January 28, 1946, in the case of *Bowles v. Cardinal Cutlery Corp., et al.,* by the United States district court for the southern district of New York, 3 CCH, Price Control Cases, 53,517, par. 52,507.

We are entirely in accord with the meaning of the word "seller" as used in § 205 (e) of the price control act, given to it by the decision last above referred to, and we are also in accord with the reasons stated by that court in arriving at its conclusions. In the cited case, plaintiff, office of price administration, sued the corporate defendant, Cardinal Cutlery Corporation, and two of its officers, George Bakalar, its president, and Joseph Blau, its treasurer, for treble damages on behalf of the United States, pursuant to the provisions of § 205 (e) of the emergency price control act of 1942, as amended. The theory upon which plaintiff claimed the individual defendants were liable is shown by paragraph 5 of the complaint, wherein it was alleged that the two officers actively participated in the management and conduct of the corporate affairs and business. All of the defendants moved to dismiss the complaint, on the ground that it did not

state a claim on which relief could be granted. We now quote from the opinion:

"The individual defendants, officers of the defendant corporation, who are alleged to have participated actively in the management and conduct of the corporate affairs and business and to 'have sold and delivered the commodities manufactured by them at prices in excess of the maximum prices,' also urge, in support of a motion to dismiss, that they are not individually liable for money damages. If the corporation was the 'seller,' then the officers of the corporation are not the sellers and cannot be held in money damages. Section 205 (e) uses the terms 'seller,' 'buyer' and 'purchaser.' The buyer is the purchaser. The seller has the commodities that are purchased and parts with them for the purchase price. The salesman is not the seller, he is an employee of the seller. An officer of the corporation is not the seller, even though he may fix an illegal price and personally negotiates the sale. The acts of the salesman or the officer may constitute a violation of the Price Regulation, for which he may be prosecuted under § 205 (b), or enjoined under § 205 (a). He is punished or enjoined because he is a violator. But because he is not the 'seller' he is not liable in money damages under § 205 (e). The 'seller' is the corporation and the first sentence of § 205 (e) of the Act authorizes an action 'against the seller on account of the overcharge.' The last sentence of § 205 (e) also uses the word 'seller,' and supports this interpretation of the word 'seller' as used in the first sentence of said section."

The opinion continues:

"Section 205 (e) as originally passed January 30, 1942, provided: . . . [A part of § 205 (e) as originally passed is then quoted.]"

The opinion continues:

"Although the section, in its original form, did not specify against whom the action could be brought, it was fairly implied that the action would be against the 'seller' who made the overcharge. (Conference report No. 1658, p. 26, 77th Congress, January 22, 1942."

At this point we desire to call attention to the fact that appellant in his brief has referred to § 302 (h) of the act (50 U.S.C.A. (App.), § 942 (h)), which provides:

"The term 'person' includes an individual, corporation, partnership, association, or any other organized group of persons, or legal successor or representative of any of the foregoing, and includes the United States or any agency thereof, or any other government, or any of its political subdivisions, or any agency of any of the foregoing: *Provided,* That no punishment provided by this Act shall apply to the United States, or to any such government, political subdivision, or agency."

We are unable to determine just what appellant's contention is relative to the applicability of the section last quoted, unless it be that the auctioneer is liable under § 205 (e) either as the "person" who conducted the sale, or as the "representative" of the county. If such is the contention of appellant, both phases thereof are answered to the contrary in the *Bowles* case. We quote again from that case:

"The expression 'legal successor or representative of any of the foregoing' means the legal successor in interest of such person, or the person who stands in the place of the seller, such as the executor or administrator of a deceased seller or the trustee in bankruptcy of any insolvent seller. The adjective 'legal' is related to both 'successor' and 'representative.' . . .

"The Price Control Act evidently intended that any such legal successor to the business, or the legal representative of a former owner of the business, should be considered a 'person' wherever that term is used in the Act. The definition of a 'person' in § 302 (h) was not changed when the Act was amended June 30, 1944. But the amendment of § *205(e)* clearly specified *that the action for money damages was to be against the 'seller.'* It did not provide that the action for money damages could be maintained against *the 'person' who violated the Act in making the sale.* Our main concern therefore is with the meaning to be given to the word 'seller' —not the word 'person'—as used in § 205 (e). . . .

"Plaintiff's attorney in the concluding point of his final brief argues that the liability of the individual defendants is not because they are 'officers or agents as such, but because they participated in the over-ceiling sales and therefore under the facts and under the law they must be considered as sellers.' That is another way of stating *that any person who violates the statute or regulations by participating in the over-ceiling sale is liable for money damages under*

§ *205 (e)*. I do not agree with that construction and the Act does not so provide. It seems to me that § 205 (e) relates to overcharges of the seller, i. e., of the person whose commodity is sold, and logically the suit would be against the seller to recover the overcharge or statutory damages which he has received and pocketed." (Italics ours.)

The opinion, in so far as the two individual defendants are concerned, concludes as follows:

"The motion of the two individual defendants to dismiss the complaint as to them is granted, for the reason that they are not liable under § 205 (e) of the Act."

We also desire to refer to and quote from *Husers v. Papania*, 22 So. (2d) (La. App.) 755, decided June 30, 1945:

"The plaintiff bases his right of recovery on the provisions of Section 205 (e) of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 925 (e) . . .

"The principal ground on which the exception is based is that the defendant had no interest in the property sold and derived no pecuniary advantage from the sale whatever; that she was only acting as the agent of the owner and carrying out his instructions.

"The act of Congress gives to the purchaser of the commodity which is sold to him above the ceiling price a right to collect treble the amount of the excess from the person selling the commodity, plus attorneys fees and costs. Who is the person selling, the one who owns the commodity and receives the money for it, or does it also include the agent who negotiates the sale and collects the money for the owner? Section 302 (h) of the Act of 1942 states that the term 'person' includes an individual, corporation, partnership, association, or any other organized group of persons, or legal successor or representative of the foregoing.

"The law does not in express terms render an agent liable for the penalty where the agent acts for the owner in making the sale. The expression in defining a person in the above section including the successor or representative of an individual, corporation, partnership, association or other organized group, evidently means the legal successor or representative of these, such as a receiver, liquidator, executor, administrator, guardian or tutor. There is quite a difference in this kind of a representative and that of an agent under a private contract. Where it is intended to hold an agent

with his principal it is usual and customary to mention the agent as such."

The opinion, after referring to another section of the statute and several cases, continues:

"We mention these rulings not as the basis for our holding in this case, but in order to emphasize the point that, insofar as the statute inflicts on the seller damages in excess of the amount the purchaser actually loses because of the sale above the ceiling price, it is at least to these damages a penal statute and should be strictly construed. This provision cannot be made operative against this defendant unless the statute expressly authorized it, and liability cannot be established or extended by implication. And since the statute does not expressly cover an agent who sells for the owner, the former must be held not to come under the law, in the absence of some allegation of complicity, conspiracy, or other circumstance showing an intent on his part to circumvent the law on behalf of his principal."

We are in accord with what is stated in the two cases last above referred to, relative to the meaning of the word "seller" in § 205 (e) of the act, and, on the authority of those cases, we are of the opinion the judgment of the trial court was right, and it is accordingly affirmed.

BEALS, C. J., MILLARD, ROBINSON, and SCHWELLENBACH, JJ., concur.