[No. 31498.   Department One.   January 12, 1951.]

Tony Sandona, Sr., *et al., Appellants,* v. The City of Cle Elum *et al., Respondents.*[1]

*Stanley Seddon* and *Preston, Thorgrimson & Horowitz,* for appellants.

[1] Reported in 226 P. (2d) 889.

*John McSherry, Jr.,* and *Weter, Roberts & Shefelman,* for respondents.

BEALS, J.—This is an action in equity, plaintiffs praying for a decree enjoining the defendant city of Cle Elum, a municipal corporation of the third class, and its officers from interfering with commercial loading and unloading of trucks in front of plaintiffs' place of business.

From the complaint, it appears that the plaintiffs Tony Sandona, Sr., and Mary Sandona, his wife, are the owners of a building in Cle Elum in which are located "Tony's Transfer," the United States post office, and two stores. Plaintiffs Tony Sandona, Jr., and Lorritta Sandona are husband and wife, and plaintiffs David and Alice Meucci are husband and wife. All of the plaintiffs own and operate the trucking and warehouse business conducted in the building owned by plaintiffs Tony Sandona, Sr., and his wife. The portion of the building in which the business is conducted fronts on Second street west in the city of Cle Elum, and has been occupied by "Tony's Transfer" since 1932.

Defendants William B. Morton and Earl McDonald are the mayor and city clerk, respectively, of Cle Elum. Defendant Richard Goodman is the chief of police of that city, and the other defendants constitute the city council.

April 25, 1949, the city council enacted ordinance No. 434, § 1, providing, in part, as follows:

"SECTION 1. That Section 3 of Ordinance No. 413 be amended to read as follows:

"Section 3. (a) No person, shall stop, stand or park a motor vehicle within the City of Cle Elum except when necessary to avoid conflict with other traffic or in compliance with direction of a peace officer or traffic officer or traffic control device in any of the following places:

. . .

"(14) Within fifty (50) feet of the driveway entrance to any fire or police station or on the side of a street opposite the entrance to any fire station within seventy-five (75) feet of said entrance when properly posted; . . ."

Plaintiffs alleged that, since 1938, a fire station owned and operated by the city of Cle Elum has stood across the

street from the premises occupied by plaintiffs; that, prior to and since that time, commercial vehicles (trucks and trailers) have stopped in front of plaintiffs' place of business for the purpose of loading and unloading both interstate and intrastate freight, and that the defendants have threatened to arrest the drivers of commercial vehicles who stop in front of the building to load or unload mail or freight, "claiming that such loading and unloading constitute a violation of the provisions of the section of said Ordinance No. 434 heretofore quoted."

Plaintiffs also alleged that the ordinance was unreasonable and confiscatory, and that they would suffer irreparable damage if it were enforced. Plaintiffs further alleged that they had no speedy or adequate remedy at law, and prayed for an injunction restraining defendants from interfering with commercial loading and unloading in front of the premises used by plaintiffs in connection with their business.

A temporary restraining order was issued and continued in effect until the entry of the decree referred to hereinafter.

Defendants answered plaintiffs' complaint, denying the material allegations thereof and affirmatively pleading the enactment of ordinance No. 434, *supra*, also pleading the location of the fire station across Second street west from plaintiffs' building. Defendants prayed that plaintiffs' action be dismissed with prejudice.

Plaintiffs replied with denials to the affirmative pleading in defendants' answer, and, the issues having been completed, the action was tried to the court, resulting in a decree dismissing plaintiffs' action with prejudice, and dissolving the restraining order theretofore entered.

From this decree, plaintiffs have appealed, making the following assignment of errors:

"(1) The trial court erred in granting respondents' motion to dismiss.

"(2) The trial court erred in dissolving appellants' restraining order.

"(3) The trial court erred in entering judgment of dismissal."

Appellant Tony Sandona, Sr., was called as a witness by appellants and testified at considerable length. At the close of his testimony, appellants rested their case, whereupon respondents moved to dismiss the action, contending that the complaint failed to state a cause of action and that the evidence introduced by appellants failed to prove any cause of action. After argument, the court sustained respondents' motion and entered the decree dismissing the action, from which appellants have appealed.

From the statement of facts, it appears that, during the year 1932, Mr. and Mrs. Sandona, Sr., had a brick building erected on their property above referred to, a part of which, at the time of the trial of the action, consisted of the motor freight terminal. The city post office and two stores were also located in the building. The entrance to the fire station is ninety-seven feet from appellants' loading station, referred to in the evidence as the "docks." These docks face Second street west. Mr. Sandona, Sr., operated the motor freight terminal until 1945, when his son, Tony, Jr., and his nephew, David Meucci, became his partners. From the evidence, it appears that, in the operation of the transfer and general motor terminal business by appellants, it is necessary that freight from common-carrier motor freight vehicles be loaded and unloaded at the docks, and that such operation constitutes approximately ninety-nine per cent of the business of the freight terminal.

The motor vehicles patronizing the docks vary in size, some truck and trailer combinations being approximately forty-eight feet in length, and the semitrailers being sometimes a few feet longer. These motor vehicles back into position alongside the docks, usually at an angle of seventy-five or eighty degrees. The front vehicle or "tractor" protrudes into the street, usually not beyond the center line, but occasionally as much as five feet beyond that line. Often as many as eight to fifteen trucks load and unload at the docks every day. The time consumed by each truck,

in loading and unloading, generally does not exceed thirty minutes, with some exceptions, as when heavy equipment is being handled and the time required may occupy as much as an hour.

The city ordinance here under attack provides, *inter alia,* that:

"No person, shall stop, stand or park a motor vehicle . . . on the side of a street opposite the entrance to any fire station within seventy-five (75) feet of said entrance when properly posted."

It is admitted that trucks of the class above described, when placed in position to load or unload at appellants' docks, stand, in part at least, within seventy-five feet of the entrance to the fire station.

Appellants contend, and the witness Sandona, Sr., so testified, that their business cannot be conducted if the ordinance is enforced as written, prohibiting the trucks from standing within seventy-five feet of the entrance to the fire station while loading and unloading. The witness testified that the area of twenty-two feet in front of the dock, which is not within a distance of seventy-five feet from the fire station, is entirely insufficient to enable appellants to carry on their business. He also testified that the building cannot be altered so as to permit necessary loading and unloading of the trucks and trailers, if the restriction established by the ordinance be enforced.

Appellants argue that, if the ordinance is held to apply to commercial motor vehicles standing while loading and unloading, it is unreasonable, confiscatory, and invalid.

Respondents contend that the ordinance applies to commercial loading and unloading, as conducted by appellants at their docks, and that the ordinance is a reasonable exercise of the police power of the city and is not confiscatory. Respondents also argue that, as the ordinance is criminal in its nature, equity has no jurisdiction.

It is the general rule that an injunction will not issue to prevent enforcement of a criminal law. *State ex rel. Munro v. Superior Court for Kitsap County,* 35 Wn. (2d) 217, 212 P. (2d) 493. It has been held, however, that

where a property right threatened with irreparable injury is involved, and the proposed act is *malum prohibitum* only, a court of equity may exercise its jurisdiction in cases where the interpretation of a statute is involved. The right to operate a lawful business is a property right. *Huntworth v. Tanner*, 87 Wash. 670, 152 Pac. 523, Ann. Cas. 1917D, 676.

In the case at bar, respondents concede that, if the city ordinance is confiscatory, it may be held invalid, and a court of equity will exercise its jurisdiction. *State ex rel. Potter v. Maybury*, 161 Wash. 142, 296 Pac. 566.

The gist of appellants' complaint is that the city ordinance is invalid as to them, because enforcement of the ordinance against appellants would result in the confiscation of their property right to carry on their business. Appellants also argue that the words "stop, stand or park," as contained in the ordinance, do not refer to commercial loading or unloading.

We shall assume that appellants' complaint alleges facts which justify consideration by a court of equity.

■ It is clear that respondent city had the power to enact the ordinance in question, such authority being conferred by Art. XI, § 11, of the constitution of this state. By Rem. Rev. Stat., Vol. 7A, § 6360-2, municipal corporations are authorized to enact vehicle and traffic regulations which are not in conflict with state laws. *Kimmel v. Spokane*, 7 Wn. (2d) 372, 109 P. (2d) 1069.

Rem. Rev. Stat., Vol. 7A, § 6360-107 [P.P.C. § 295-45], reads in part as follows:

"(a) No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with the directions of a peace officer or traffic control device, in any of the following places: . . .

"10. Within fifty (50) feet of the driveway entrance to any fire or police station or on the side of a street opposite the entrance to any fire station within seventy-five (75) feet of said entrance when properly sign posted; . . ."

■ Of course, in the case at bar, appellants attack a city ordinance, but the same rules of statutory construction

apply to the interpretation of municipal ordinances as to the interpretation of state statutes. 37 Am. Jur. 826, § 187; 2 Sutherland Statutory Construction (3d ed.) 273, § 3905.

■ A statute or city ordinance which is not ambiguous must be interpreted according to the plain and ordinary meaning of the language used. 50 Am. Jur. 204, § 225; *Cochran v. Nelson,* 26 Wn. (2d) 82, 173 P. (2d) 769; *State v. Houck,* 32 Wn. (2d) 681, 203 P. (2d) 693.

■ In cases where a statute or ordinance provides for stated exceptions, no other exceptions will be assumed by implication. *Monroe Calculating Machine Co. v. Department of Labor & Industries,* 11 Wn. (2d) 636, 120 P. (2d) 466. The exceptions contained in the ordinance in the case at bar are similar to those in the state statute, *supra.* The ordinance itself shows beyond question that commercial loading and unloading of motor vehicles was not excepted from its scope.

In the case of *Townsend v. Jaloff,* 124 Ore. 644, 264 Pac. 349, it was held that a stop by a milk truck to deliver milk to a customer was prohibited by a statute forbidding the stopping of a motor vehicle at that particular place. The cases of *McKay v. Hedger,* 139 Cal. App. 266, 34 P. (2d) 221, and *Blessing v. Welding,* 226 Iowa 1178, 286 N. W. 436, are to the same effect.

Appellants cite authorities to the effect that statutes or ordinances governing the parking of motor vehicles, which forbid parking or standing, do not prohibit commercial loading or unloading. These cases are not in point, as the ordinance in question forbids any person to "stop, stand or park a motor vehicle" within the prohibited area.

Appellants cite the case of *Neeley v. Bock,* 184 Wash. 135, 50 P. (2d) 524, in which it appeared that the plaintiff was driving a truck loaded with cinders to be used in connection with construction work at the side of a paved street. The foreman in charge of the work signaled plaintiff to stop, which he did, the two right wheels of the truck being off the pavement. The defendant was driving an automobile following the truck and, when the plaintiff stopped to receive instructions as to the unloading of the

cinders, the defendant's car collided with the truck, inflicting injuries upon the plaintiff for which recovery was sought. From a judgment entered upon the verdict of a jury in favor of the defendant, the plaintiff appealed. This court, in an opinion by Main, J., called attention to the fact that the statute then in effect provided that " 'No person shall park or leave standing any vehicle whether attended or unattended upon the paved or improved or main traveled portion of any public highway . . .' " The trial court had instructed the jury "on the question of 'park or leave standing.' " This court, distinguishing the case of *Gaches v. Daw,* 168 Wash. 162, 10 P. (2d) 1111, held the instruction to be erroneous and reversed the judgment, with directions to grant plaintiff's motion for a new trial.

Appellants call attention to that portion of the opinion in the *Neeley* case quoting from 2 Berry on Automobiles (7th ed.) 132 to the effect that:

" 'The term "parking," however, when applied to the traffic of automobiles does not usually comprehend the standing of vehicles while they are being loaded or unloaded, nor while they are otherwise in active use.' "

In the case at bar, we are concerned with the meaning of the words "stop, stand or park," which are more definite and comprehensive than the phrase "park or leave standing." The case cited is not here in point.

In the case of *Gaches v. Daw, supra,* it appeared that the defendant had stopped his car on a paved highway for the purpose of ascertaining the direction in which he desired to proceed. The plaintiff, driving in the same direction, collided with the stopped car. A judgment in favor of the plaintiff was affirmed, this court holding that the defendant had violated the law and that the verdict of the jury in plaintiff's favor was supported by the evidence.

Appellants vigorously contend that, as to them, the ordinance in question is, in effect, confiscatory and, therefore, invalid, arguing that enforcement of the ordinance will force them to cease engaging in business at the present location. .

Appellants rely upon the case of *Eisenmann v. Tester*, (1934), 47 Ohio App. 275, 191 N. E. 839, in which it appeared that Neva Tester (the defendant in error) was aiding her father by moving household articles in her automobile to his home on the south side of Oakwood avenue in the city of Toledo. Pursuant to lawful authority, the director of public safety had promulgated a rule forbidding the parking of automobiles on the south side of the street. During the course of the operation, Mrs. Tester stepped back of her car and was struck and injured by an automobile driven by the plaintiff in error. The court of appeals affirmed a judgment in Mrs. Tester's favor, holding that an abutting owner had the right to use the street for loading and unloading materials. The opinion does not state why parking had been forbidden in that zone.

In the case at bar, an essential element of the police power of the city is directly concerned, as interference with a city fire engine, which must leave its station with the greatest possible speed, should not be tolerated. The mere forbidding of "parking" an automobile might, under some circumstances, be appropriately considered as not applying to the stopping of a car for loading or unloading at a residence. The case cited is not here in point.

Appellants also cite the case of *Haggenjos v. Chicago* (1929), 336 Ill. 573, 168 N. E. 661, in which the supreme court of Illinois held that an ordinance of the city of Chicago prohibiting parking during every business day on any street or alley within a district known as the "loop," was unreasonable and invalid. The plaintiff was fined for parking in violation of the ordinance and sued out a writ of error, which was entertained by the supreme court. That court held that the ordinance was invalid, the territory to which the ordinance applied extending more than half a mile in each direction, but observed that:

"Ordinances prohibiting the parking of vehicles in certain restricted localities between certain hours or at all times, or limiting the parking privilege to an hour, to

thirty minutes, to twenty minutes, are common and have been sustained. [Citing cases.]"

The court was careful to note that, while it might have been a reasonable exercise of the city's authority to restrict the right to park automobiles on the streets to a limited period or to forbid it during certain hours and in certain portions of the district concerned, it was not reasonable to entirely prohibit parking within the area.

In the case of *Hickey v. Riley,* 177 Ore. 321, 162 P. (2d) 371, the supreme court of Oregon said:

"Parking is not a right, but a privilege, and, as such, is subject to reasonable regulation under the police power. *Gardner v. City of Brunswick,* (1943) 197 Ga. 167, 28 S. E. (2d) 135."

In their brief and reply brief, appellants cite other authorities which they contend support their position, and also discuss the authorities cited by respondents. They vigorously contend (while admitting that their method of conducting their loading and unloading business violates the city ordinance) that, at least as to them, the ordinance is unreasonable and that the enforcement thereof as against appellants should be restrained by judicial decree. From the evidence, it appears that the street in question is eighty feet in width, including ten feet on each side allowed for sidewalks.

The ordinance here under attack is not only a police power measure but was enacted in support of one of the most important elements of the city's police power, namely, protection of the city against fire. The language of the ordinance follows the section of the statute referred to above, although, as observed by appellants, the ordinance embraces only one section of the law. It is only in extreme cases that courts limit the police power of a municipal corporation; and this is particularly true in such a case as is here presented, where it appears that the ordinance was enacted for the protection of the city and its inhabitants against an ever-present danger.

Upon the facts before us, it is not necessary for this court to determine the point from which the seventy-five-foot limit on stopping, standing, or parking a motor vehicle should be measured.

We agree with the trial court that the ordinance, as enacted, is a valid exercise, by the legislative authorities of the city, of the powers vested in the city by law in connection with its police power.

The decree appealed from is affirmed.

SCHWELLENBACH, C. J., HILL, and GRADY, JJ., concur.

DONWORTH, J. (concurring)—I concur in the affirmance of the decree dismissing the action but upon a somewhat narrower ground than that adopted in the majority opinion.

Art. XI, § 11, of the state constitution vests in cities within their corporate limits the same police power as is possessed by the legislature. *Detamore v. Hindley*, 83 Wash. 322, 145 Pac. 462; *Continental Baking Co. v. Mount Vernon*, 182 Wash. 68, 44 P. (2d) 821.

The test as to the validity of such an ordinance as that involved here is the same as that applicable to a state statute. As was said in *State v. Pitney*, 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A, 209 (affirmed in *Pitney v. Washington*, 240 U.S. 387, 60 L. Ed. 703, 36 S. Ct. 385):

"In determining whether the provisions of a law bring it within the police power, it is not necessary for the court to find that facts exist which would justify such legislation. If a state of facts can reasonably be presumed to exist which would justify the legislation, the court must presume that it did exist and that the law was passed for that reason. If no state of circumstances could exist to justify the statute, then it may be declared void because in excess of the legislative power."

See, also, *Wiegardt v. Brennan*, 192 Wash. 529, 73 P. (2d) 1330.

Tested by these principles, § 3 (subd. 14) of ordinance No. 434 of the city of Cle Elum is a valid exercise of the city's police power, since it clearly appears from what is said in the majority opinion that a state of facts can reasonably be presumed to exist which would justify its enactment.

Appellants seek to enjoin the enforcement of this ordinance against them and their customers who "stop, stand, or park" the front vehicle of their trucks in that portion of Second street which is within a radius of seventy-five feet of the fire station entrance while the trucks are being loaded or unloaded.

We have several times held that no one has an absolute right to use a street to conduct a business for private gain. The control which a city has over its streets is described in *Hadfield v. Lundin,* 98 Wash. 657, 168 Pac. 516, Ann. Cas. 1918C, 942, L. R. A. 1918B, 909, in this language:

"The streets and highways belong to the public. They are built and maintained at public expense for the use of the general public in the ordinary and customary manner. The state, and the city as an arm of the state, has absolute control of the streets in the interest of the public. No private individual or corporation has a right to the use of the streets in the prosecution of the business of a common carrier for private gain without the consent of the state, nor except upon the terms and conditions prescribed by the state or municipality, as the case may be. The use of the streets as a place of business or as a main instrumentality of business is accorded as a mere privilege and not as a matter of natural right."

To the same effect are our decisions in *Allen v. Bellingham,* 95 Wash. 12, 163 Pac. 18, *State ex rel. Schafer v. Spokane,* 109 Wash. 360, 186 Pac. 864, and *McGlothern v. Seattle,* 116 Wash. 331, 199 Pac. 457.

In the present case, a state of facts not only can reasonably be presumed to exist which justifies the enactment of the ordinance, but such a state of facts has been actually proven in this case to exist; and I, therefore, concur in the affirmance of the trial court's decree.

March 1, 1951. Petition for rehearing denied.